621 A.2d 1239

John SHULTZ (a/k/a Schultz), Deceased,
Marie Shultz, Petitioner,

v.

WORKMEN'S COMPENSATION APPEAL BOARD
(LEROY ROOFING COMPANY and The PMA
Group), Respondents.

Commonwealth Court of Pennsylvania.

Submitted Oct. 23, 1992.

Decided March 3, 1993.

William H. Nast, for petitioner.

Michael R. Bonshock, for respondents.

Before CRAIG, President Judge, PELLEGRINI, J., and BLATT, Senior Judge.

CRAIG, President Judge.

Marie Shultz, the claimant and widow of John Shultz, is appealing an order of the Workmen's Compensation Appeal Board that affirmed a referee's decision granting the petition of the employer, LeRoy Roofing Co., for termination of benefits after determining that the claimant had engaged in a meretricious relationship subject to § 307(7) of the Pennsylva-

nia Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 562 (the Act). We affirm.

The referee found the following facts. The claimant has been receiving death benefits in the amount of $94.00 a week since the death of her husband on June 26, 1972. Currently, the claimant holds two jobs and earns approximately $18,-000.00 a year without the death benefits.

The claimant had tried unsuccessfully to buy a home, but could not get a loan. However, a friend, John Ritter, co-signed with the claimant and they jointly received a mortgage. After Ritter sold his trailer in 1986, they lived together at their jointly owned residence in Mechanicsburg, and used the house as collateral for other loans for which they again co-signed. She makes all the payments for their "partnership mortgage." He helps with "upkeep" around the house. Together they share the expenses for food, utilities, taxes and home insurance, but each pays their own car insurance.

The claimant characterizes her relationship with Ritter as a "partnership deal" between friends. Although the claimant does not hold herself out as Ritter's wife, she goes to dances and parties with him. The real property taxes for the claimant and Ritter's home identify the owners as "Irvin O. and E. Marie Ritter." In addition, in a joint judgment entered against both the claimant and Ritter, they were named "Irvin O. Ritter and Marie E. Ritter also known as Marie E. Shultz, also known as Marie Ritter, also known as E. Marie Shultz."

Ritter and the claimant cooperate in other financial arrangements, too. In addition to holding a joint checking account, the claimant and Ritter co-signed for a home improvement loan, and for a loan borrowed against land owned by the claimant in Huntington County.

On October 10, 1989, the employer filed a petition for termination of benefits. At the hearing before the referee, the claimant testified as follows:

[Employer's attorney]: Have you ever had occasion to sleep in the same bed with Mr. Ritter?

[The claimant]: Yes, I have.

Q:  Am I correct in assuming that that would have been at least since 1976?

A:  Yes.

. . . .

Q:  Could it also have been before [1976]?

A:  Most likely.

. . . .

Q:  On any of the vacations that you may have gone on with Mr. Ritter, be it the Caribbean or Bermuda, or wherever you may have gone on vacation with him, during any of these vacations have you ever had the chance to engage in sexual intercourse with him on vacation?

A:  Of course.

Based on this testimony, the referee found that the claimant had sexual relations with Ritter, and that the claimant lived in a meretricious relationship with him.  The referee terminated the claimant's death benefits on April 25, 1990.  The board affirmed the referee's decision on May 22, 1992, pursuant to § 307(7) of the Act, which provides that:

> [I]f, upon investigation and hearing, it shall be ascertained that the widow or widower is living with a man or woman, as the case may be, in meretricious relationship and not married ... the board may order the termination of compensation payable to such widow or widower.

*Id.*

Now, on appeal the claimant asserts that the board violated several federal and state constitutional provisions, and committed an error of law.  Specifically, the claimant argues that § 307(7) violates Article III, Section 18 of the Pennsylvania Constitution (Article III); that § 307(7) violates her rights under the United States and Pennsylvania Constitutions to privacy, equal protection and due process; that § 307(7) is effectively a bill of attainder; and that the board abused its discretion in terminating the claimant's benefits in light of her economic circumstances.[1]

---

1.  In examining appeals from the board, this court's scope of review is limited to determining whether constitutional rights have been violated,

Except for the claimant's attainder argument, this court has addressed all of the above constitutional questions, and rejected each one. Briefly, the claimant's constitutional arguments are as follows. The claimant believes that Article III of the Pennsylvania Constitution prohibits any limitation in her death benefits. She relies upon the following language from the Constitution:

> The General Assembly may enact laws requiring the payment by employers, or employers and employees jointly, of reasonable compensation for injuries to employees arising in the course of their employment, and for occupational diseases of employees, whether or not such injuries or diseases result in death, and regardless of fault of employer or employe, and fixing the basis of ascertainment of such compensation and the maximum and minimum limits thereof, and providing special or general remedies for the collection thereof; but in no other cases shall the General Assembly limit the amount to be recovered for injuries resulting in death. . . .

Pa. Const. art. III, § 18. In addition, the claimant contends that § 307(7) violates her privacy rights by compelling her to testify about her intimate relations. She claims that her right to equal protection has been violated because the law treats her differently than all other widows without a rational relationship to a legitimate state interest. And, she suggests that she has been denied her due process because the term "meretricious relationship" is void for vagueness.

This court's most recent decision addressing § 307(7)'s constitutionality is *McCusker*. The facts and the legal arguments are nearly identical to this case. In *McCusker*, the claimant began receiving compensation for his wife's death. At the hearing for termination of benefits, the claimant admitted living with a woman and her child in a rented townhouse for three and a half years. The claimant also admitted to socializing with the woman in the community and to having sexual

errors of law have been committed, or whether findings of fact are not supported by substantial evidence. *McCusker v. Workmen's Compensation Appeal Board (Rushton Mining Company)*, 145 Pa.Commonwealth Ct. 261, 603 A.2d 238 (1992).

relations with her for the past three and a half years. As a result of the claimant's testimony, the referee found that he had engaged in a meretricious relationship, and the board affirmed.

The claimant in *McCusker* argued, among other things, that § 307(7) violated Article III, as well as the claimant's rights to privacy, equal protection and due process under both the federal and state constitutions. This court held, in pertinent part, as follows:

> [T]he phrase [of Article III] cited by Claimant ... operates only to preclude the enactment of legislation limiting the amount of recovery for fatal injuries other than those arising in the course of employment. We conclude that the termination of Claimant's benefits pursuant to Section 307(7) of the Act does not violate Article [III].
>
> . . . .

In *Nevius [v. Workmen's Compensation Appeal Board,* 52 Pa.Commonwealth Ct. 418, 416 A.2d 1134 (1980) ] we held that neither a suspect group nor fundamental privacy interest is involved in a termination proceeding under Section 307(7) of the Act. We further noted that Section 307 is a valid provision if it can be found to be rationally related to furthering a legitimate state interest. We concluded that the legislature had a rational basis for this classification by noting that the legislature is properly concerned with fostering good morals by encouraging legally recognized and responsible family relationships and discouraging the formation of illicit relationships.

Although the Supreme Court upheld the Board's refusal to grant a termination petition in [*Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Sadvary),* 524 Pa. 235, 570 A.2d 84 (1990) ] on the basis of economic hardship to the claimant, it must be noted that the claimant had ceased her meretricious relationship upon the filing of the employer's petition. Thus it cannot be argued that the Supreme Court's interpretation of Section 307(7) in Sadvary has obscured or lessened the legislature's purpose of encouraging marriage and legally recognized family relation-

ships as well as that of closing a loophole that would encourage claimants to refrain from remarrying. Accordingly, under Nevius, we conclude that Section 307(7) of the Act does not violate Claimant's constitutional rights to privacy, equal protection or due process.

*Id.*, 145 Pa.Commonwealth Ct. at 265, 267, 603 A.2d at 240, 241 (citations omitted). The *McCusker* decision is directly on point and governs in this case. Therefore, we must reject the claimant's constitutional arguments concerning Article III, privacy, equal protection and due process.

We also find the claimant's attainder argument unpersuasive. The claimant contends that § 307(7) works an unconstitutional bill of attainder insofar as she is, "being punished by legislative fiat because of a lifestyle of which the legislature of 1939 disapproved."

However, a bill of attainder is "a legislative enactment which determines guilt and inflicts punishment upon an identifiable person or group without a judicial trial." *Commonwealth v. Scheinert*, 359 Pa.Super. 423, 429, 519 A.2d 422, 425 (1986), *appeal denied*, 517 Pa. 606, 536 A.2d 1330 (1987) (citing *Nixon v. Administrator of General Services*, 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977)). Of course, § 307(7) expressly requires an investigation and a hearing before the board can decide whether to continue or terminate benefits. Furthermore, as we discuss in greater detail below, the record in this case establishes that the referee and the board considered the claimant's case and her economic condition before deciding to terminate her benefits. Therefore, § 307(7) does not work a bill of attainder.

Nonetheless, the claimant suggests that this court has called § 307(7) a bill of attainder. However, the claimant relies upon a concurring opinion by the author of this present opinion in *Bethenergy Mines Inc. v. Workmen's Compensation Appeal Board (Sadvary)*, 117 Pa.Commonwealth Ct. 465, 543 A.2d 1268 (1988), before this court's order was reversed by the Pennsylvania Supreme Court. The concurring opinion states that, "the termination sanction imparts to this provision of the

law the nature of a punitive bill of attainder." *Id.* at 471, 543 A.2d at 1271 (Craig, J., concurring).

However, that concurring opinion concerned what this court then believed was a non-discretionary statutory directive that the board terminate benefits automatically upon the mere finding that a widow or widower engaged in a meretricious relationship. The Pennsylvania Supreme Court subsequently clarified the statutory power of the board in *Bethenergy Mines Inc. v. Workmen's Compensation Appeal Board (Sadvary)*, 524 Pa. 235, 570 A.2d 84 (1990), and found that termination of benefits is a discretionary power, thereby eliminating the automatic and attainder-like nature of § 307(7).

Furthermore, if this court had actually concluded on the merits that § 307(7) acted as a bill of attainder, this court would have declared the section unconstitutional. We could not do so in *Sadvary*, nor are we in a position to declare the section unconstitutional today.

■ Finally, the claimant argues that the board erred in terminating her benefits in light of her economic circumstances. In particular, the claimant contends that the board used the wrong test to determine whether to terminate her benefits. She directs our attention to the following language from the board:

[t]he Referee has the discretion to . . . look at the widow's economic need in determining whether benefits should be terminated or continue. We believe the [Referee] properly reviewed this facet of the case in making his decision and that, while the actual test is the severity of Claimant's economic loss if benefits are terminated, there is substantial evidence of record and in the Referee's findings to support the conclusion that Claimant would not suffer an undue economic hardship if her benefits were terminated *due to the meretricious relationship precisely because of the economic nature of her relationship with Mr. Ritter since 1976.* See Findings of Fact Numbers 7, 14 and 16 wherein the Referee found Claimant made $18,000 annually. Based on the foregoing it is clear that there was substantial evidence of record to support termination under the stan-

dards set forth in [*Sadvary*]. (Citations omitted, emphasis supplied.)

The claimant asserts that the proper test is not "severity of economic loss". Rather, the claimant suggests that the board should examine the economic effect of the termination while using the remedial nature of the act as the "guiding light" of the analysis.

A clearer characterization of the proper analysis is, literally, does the sexual relationship involve an economic return? Stated more objectively to avoid the condemnatory "harlot" [2] implication embodied in the term chosen by the legislature, does the marriage-like relationship result in the widow or widower being "self-supporting" in that she or he is no longer in need of the worker compensation for support?

Our analysis is in accord with the Pennsylvania Supreme Court's decision in *Sadvary*. The claimant in that case was no longer in a meretricious relationship when the board issued its decision not terminating benefits. Because the claimant there had no other means of support, the Pennsylvania Supreme Court held that the board properly considered whether the claimant could support herself based on her income and earning potential if her benefits were terminated. *Id.* at 240, 570 A.2d at 86.

In this case, the board characterizes its test as an examination of the "severity of the economic loss", but the board's analysis indicates that the board determined whether the claimant would be able to support herself without receiving benefits. The board concluded that, although the referee applied the wrong analysis [3], the referee's findings of fact supported the conclusion that the claimant will be able to support herself if her benefits are terminated. The board

---

2. "Meretricious" is defined in *Webster's Third New International Dictionary* 1413 (1986), as follows: "of or relating to a prostitute: having harlot's traits."

3. Of course, the board is permitted to correct all errors of law made by a referee in reaching conclusions based on the referee's findings of fact. *Universal Cyclops Steel Corporation v. Workmen's Compensation Appeal Board and Krawczynski*, 9 Pa.Commonwealth Ct. 176, 182, 305 A.2d 757, 761 (1973).

reached this conclusion precisely because of the economic benefits the claimant receives from her relationship with Ritter.

■ Our review of the record confirms that the claimant had sufficient means to support herself without Workmen's Compensation benefits as a consequence of the relationship with Ritter. In addition to an annual income of approximately $18,000, the claimant has considerable assets including, a car, a house, a joint checking account, and two and a half acres of woodland in Huntington County which is held in her own name. In addition, the claimant and Ritter have managed to acquire several mortgages and loans together.

There is no evidence that the claimant is totally dependent upon her compensation or living in an economically depressed area such as the claimant in *Sadvary*. Therefore, we conclude that the board applied the proper analysis to the facts as found by the referee, and that the board's conclusion is supported by substantial evidence in the record.

We note that the claimant also now contends that Ritter died before the referee issued his decision and order. The referee held two hearings for this case, the second of which was on January 16, 1990. Ritter allegedly died on February 14, slightly more than two months before the referee filed his decision on April 25, 1990. The claimant asserts that, to the extent that the referee and the board found that the claimant would not suffer severe economic hardship *because of her continuing* relationship with Ritter, the board erred in not analyzing the claimant's new economic position without Ritter's support.

However, there is nothing in the record indicating that the claimant raised this issue before the board. Nor has the claimant supplied us with any reason why she did not raise this issue before the board. Therefore, she is barred from raising the argument for the first time on appeal.

Accordingly, we conclude that the claimant's constitutional arguments are insufficient in law, and the board did not err in

terminating the claimant's benefits in light of her economic circumstances.

## ORDER

NOW, March 3, 1993, the order of the Workmen's Compensation Appeal Board dated May 22, 1992, at No. A90–1178, is affirmed.