**Francis E. WEAVER, Petitioner,**

v.

**DEPARTMENT OF CORRECTIONS, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 18, 1998.

Decided Nov. 2, 1998.

Francis E. Weaver, petitioner, pro se.

Mark E. Guzzi, Camp Hill, for respondent.

Before FRIEDMAN and KELLEY, JJ., and JIULIANTE, Senior Judge.

JIULIANTE, Senior Judge.

Before this Court in its original jurisdiction are the preliminary objections in the nature of a demurrer filed on behalf of the Department of Corrections (DOC) in opposition to Francis E. Weaver's petition for review "in the nature of mandamus and/or prohibition." In his mandamus action, Weaver requests that this Court invalidate DOC's inmate medical service co-pay regulations promulgated under the authority of the Prison Medical Services Act (Medical Services Act).[1] Weaver further requests that this Court invalidate the Medical Services Act and the regulations promulgated thereunder because they are ex post facto laws and, therefore, unconstitutional. For the reasons set forth below, we grant DOC's preliminary objections and dismiss Weaver's petition.

Weaver, a pro se litigant, is an inmate currently incarcerated at the State Correctional Institution at Retreat (SCI–Retreat). On May 3, 1998, Weaver filed his mandamus action alleging not only that DOC did not properly promulgate regulations to implement the Medical Services Act, but also that said Act, and the regulations promulgated thereunder, are ex post facto laws.

Specifically, Weaver alleges: (1) that DOC may not enforce the inmate medical service co-pay regulations because their publication in the October 4, 1997 *Pennsylvania Bulletin* was not sufficient notice to inmates in correctional facilities and, as a result, the inmates did not have an opportunity to comment on or object to the regulations, and that this also constitutes a violation of what is commonly known as the Right to Know Act;[2] (2) that DOC did not publish the final form of the regulations in the *Pennsylvania Bulletin* in violation of the requirements of the Regulatory Review Act[3] and the Commonwealth Documents Law;[4] and (3) that the Medical Services Act and the regulations promulgated thereunder are ex post facto laws and, therefore, unconstitutional.

DOC timely filed preliminary objections in the nature of a demurrer alleging that Weaver has failed to state a claim for which relief can be granted. Specifically, DOC maintains

1. Act of May 16, 1996, P.L. 220, 61 P.S. §§ 1001–1017.

2. Act of June 21, 1957, P.L. 390, *as amended,* 65 P.S. §§ 66.1—66.4.

3. Act of June 25, 1982, P.L. 633, *as amended,* 71 P.S. §§ 745.1—745.14.

4. Act of July 31, 1968, P.L. 769, *as amended,* 45 P.S. §§ 1102—1602.

that it had provided proper notice of rule-making concerning the regulations, that the regulations were published in final form and that the Medical Services Act and the regulations promulgated thereunder are to be applied prospectively and, therefore, are not ex post facto laws.

■ "Initially we note that when ruling on preliminary objections, this Court considers as true all well-pleaded facts which are material and relevant." *Giffin v. Chronister*, 151 Pa.Cmwlth. 286, 616 A.2d 1070, 1072 (Pa.Cmwlth.1992). "Specifically, a preliminary objection in the nature of a demurrer is deemed to admit all well-pleaded facts and all inferences reasonably deduced therefrom." *Id.* "In determining whether to sustain a demurrer the court need not accept as true conclusions of law, unwarranted inferences from the facts, argumentative allegations, or expressions of opinion." *Id.*

## I.

■ Weaver's first two arguments are that DOC failed to comply with applicable rulemaking requirements in that DOC failed to provide him with an opportunity to comment on and/or object to the proposed inmate medical service co-pay regulations, and that DOC did not publish these regulations in final form as required by the Commonwealth Documents Law and the Regulatory Review Act.[5] To the contrary, DOC argues that Weaver's lawsuit is premature and that it did

publish the regulations in final form and satisfied the requirements of both the Commonwealth Documents Law and the Regulatory Review Act.

Section 201 of the Commonwealth Documents Law, 45 P.S. § 1201, requires that an agency must give "public notice of its intention to promulgate, amend or repeal any administrative regulation." Section 201 further requires that the notice include: 1) the text of the proposed regulation, 2) a statement of the statutory authority under which it is promulgated, 3) a brief explanation of the proposed regulation, and 4) a request for written comments by any interested person concerning the proposed regulation or change therein.

Likewise, Section 5 of the Regulatory Review Act, 71 P.S. § 745.5, requires that the agency submit "a proposed regulation to the Legislative Reference Bureau for publication of notice of proposed rulemaking in the Pennsylvania Bulletin as required by the Commonwealth Documents Law...."

■ In the instant case, it appears that DOC has sufficiently complied with these requirements. In the October 4, 1997 issue of the *Pennsylvania Bulletin*, DOC published a notice of proposed rulemaking stating that it was promulgating regulations under the authority of the Medical Services Act to establish and impose inmate co-pay fees as found in said Act[6]. Specifically, the notice stated:

---

5. We note that there is a distinction between an agency's regulations, which must be established through proper rulemaking procedures, as opposed to an agency's general statement of policy, which does not. "An agency may establish binding policy through rulemaking procedures by which it promulgates substantive rules.... A properly adopted substantive rule establishes a standard of conduct which has the force of law...." *Pennsylvania Human Relations Commission v. Norristown Area Sch. Dist.*, 473 Pa. 334, 349–350, 374 A.2d 671, 679 (1977) (citing *Pacific Gas & Elec. Co. v. Federal Power Comm'n*, 506 F.2d 33, 38 (D.C.Cir.1974)). "A general statement of policy is the outcome of neither a rulemaking nor an adjudication; it is neither a rule nor a precedent...." *Id.* In the instant case, DOC's inmate medical service co-pay regulations are substantive rules and must be promulgated by means of the rulemaking process.

6. Under the inmate medical service co-pay regulations, DOC would charge an inmate a $2.00 fee for: a) non-emergency medical service provided at the inmate's request; b) medical service, including emergency service, provided to the inmate as a result of self-inflicted injury or illness; c) initial prescriptions, with the exceptions of immunizations, vaccinations, prenatal care and psychotropic medications; d) medical service provided to an inmate as a result of his or her assaultive conduct; e) medical service provided to an inmate as a result of participation in sports; and f) medical service provided to determine whether inmate can participate in sports. The regulations also require that an inmate who has private health insurance shall pay for his or her own medical needs and that an inmate who injures another inmate by assaultive conduct must pay a fee of (2/3) two-thirds of the injured inmates' medical services. These fees will be deducted from the inmates' personal prison account.

The Department of Corrections (Department) acting under the authority conferred by the Prison Medical Services Act (act) (61 P.S. §§ 1011–1017) ... gives public notice of its intention to adopt amendments to Chapter 93 (relating to State correctional institutions and facilities).

The proposed amendment will enable the Department to impose fees on inmates in State correctional institutions and facilities for the provision of certain medical services. The proposed amendment will also require inmates who are covered by medical insurance to pay for the medical services through that insurance as far as the medical insurance may allow....

. . . .

The proposed amendment shall be effective upon closure of the public comment period, the regulatory review process and subsequent publication as final rulemaking in the *Pennsylvania Bulletin.*

*Public Comment Period/Contact Person*

Written comments concerning the Department's proposed amendment of § 93.12 shall be submitted to Kathleen Zwierzyna, Director, Bureau of Health Care Services, Pennsylvania Department of Corrections, 2520 Lisburn Road, P.O. Box 598, Camp Hill, PA 17001–0598. Written comments must be received within 30 days of the publication of this notice of proposed rulemaking in the *Pennsylvania Bulletin.*

(*Pennsylvania Bulletin,* Vol. 27, No. 40, pp. 5095, 5096; DOC's Brief, Ex. A). Clearly, the notice also stated that all interested persons could submit written comments to DOC within 30 days.

Nevertheless, Weaver asserts that this notice was invalid because, *inter alia,* no public hearings were held, the regulation was not published in all major newspapers of the Commonwealth, the matter was not given proper review by DOC's Chief Counsel or the Attorney General, the inmates were not given a proper opportunity to respond, and a complete financial impact statement was not filed. In particular, Weaver contends that DOC should have provided inmates with notice of the proposed rulemaking. DOC, to the contrary, contends that it met its notice obligations under the Commonwealth Documents Law and Regulatory Review Act and has no obligation under any statute or case law to provide inmates in state correctional institutions with any type of notice other than what is contained in the *Pennsylvania Bulletin.*

We agree. DOC sufficiently complied with the requirements of the Commonwealth Documents Law and Regulatory Review Act by publishing its notice of proposed rulemaking regarding the inmate medical service co-pay regulations in the October 4, 1997 issue of the *Pennsylvania Bulletin.*

Regarding the other requirements mentioned by Weaver, we note that his mandamus petition was filed before DOC published the final form of the inmate co-pay regulations in the May 30, 1998 issue of the *Pennsylvania Bulletin.* Pursuant to 45 Pa.C.S. § 905, that publication created a rebuttable presumption that the regulations were duly issued, approved as to legality by the Department of Justice, and that all applicable requirements for the promulgation of the regulations had been met. Insofar as Weaver's petition was filed prematurely before the regulations were published in final form, Weaver has failed to allege any facts in his petition to rebut the presumption in 45 Pa. C.S. § 905 that the inmate medical service co-pay regulations were properly promulgated.

■ We also reject Weaver's contention that DOC violated the Right to Know Act by not giving inmates adequate time to respond to the proposed co-pay regulations. The Right to Know Act is irrelevant because it does not govern the promulgation of regulations. Rather, the Right to Know Act requires only that DOC make its public records open for examination, copying or inspection. 65 P.S. §§ 66.2 and 66.3. Weaver makes no allegation that DOC failed to make their public records open for examination, copying or inspection. Consequently, Weaver states no cause of action under the Right to Know Act.

In view of the foregoing, we conclude that DOC properly promulgated its inmate medical service co-pay regulations and that Weav-

er has failed to allege any facts in his petition that would entitle him to a ruling that DOC's inmate co-pay regulations are invalid or not in compliance with the Commonwealth Documents Law and the Regulatory Review Act.[7]

## II.

■ Weaver also contends that the Medical Services Act and the regulations promulgated thereunder are ex post facto laws and, therefore, violate Article I, § 10 of the United States Constitution.[8] "The ex post facto prohibition forbids the Congress and the States to enact any law 'which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.'" *Weaver v. Graham,* 450 U.S. 24, 28, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981) (quoting *Cummings v. Missouri,* 4 Wall. 277, 325–326, 18 L.Ed. 356 (1866)); *see also Stewart v. Pennsylvania Board of Probation and Parole,* 714 A.2d 502 (Pa.Cmwlth.1998) (ex post facto clause permits individuals to go about their business without being afraid of being punished for an act that was not prohibited by law at the time it was committed).

■ Moreover, the ex post facto clause "has been interpreted to pertain *exclusively to penal statutes."* *Kansas v. Hendricks,* 521 U.S. 346, ——, 117 S.Ct. 2072, 2086, 138 L.Ed.2d 501 (1997) (emphasis added). Specifically, the clause "is aimed at laws that 'retroactively alter the definition of crimes or increase the punishment for criminal acts.'" *California Department of Corrections v. Morales,* 514 U.S. 499, 504, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995) (citing *Collins v. Youngblood,* 497 U.S. 37, 43, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990)).

■ In *Weaver v. Graham,* the Supreme Court recognized that two essential elements must be present in order for a criminal or penal law to be ex post facto: "it must be *retrospective, that is, it must apply to events occurring before its enactment,* and it must disadvantage the offender affected by it." 450 U.S. at 29, 101 S.Ct. 960 (emphasis added). In the case at bar, neither the Medical Services Act nor the regulations promulgated thereunder are penal in nature. They do not criminalize any type of conduct that was legal before their enactment nor do they deprive a criminal defendant of any defense that was available to him at the time of his alleged crime. Rather, under the Act and regulations, fees are imposed upon inmates for certain non-emergency medical services in order to reduce government costs in providing those services.

Even assuming *arguendo* that the Medical Services Act and regulations could be considered penal in nature, they did not become enforceable until published and apply only prospectively, not retrospectively. As such, we reject Weaver's contention that either the Medical Services Act or the regulations promulgated thereunder by DOC violate the ex post facto prohibition in U.S. Const. Art. I, § 10. *Morales; Weaver v. Graham.*

■ In summary, we conclude that DOC properly promulgated its regulations under the Medical Services Act in accordance with the requirements of the Commonwealth Documents Law and the Regulatory Review Act. Furthermore, neither the Medical Services Act nor the regulations promulgated thereunder are ex post fact laws. Hence, Weaver is not entitled to a ruling that either the Medical Services Act or the regulations promulgated thereunder are invalid or unenforceable. We therefore grant DOC's preliminary objections in the nature of a demurrer and dismiss Weaver's mandamus action.[9]

**7.** We note that Weaver further contends that in addition to the proposed regulations, he was also improperly denied an opportunity to comment on DOC's Policy Bulletin DC–ADM 820 (Policy Bulletin) and that, therefore, it should also be ruled invalid. This allegation also fails to state a cause of action under any law. The Policy Bulletin is not an agency regulation. Rather, it is an internal directive to DOC employees.

**8.** In *Stewart v. Pennsylvania Board of Probation and Parole,* 714 A.2d 502, 509 (Pa.Cmwlth.1998),

this Court noted that the ex post facto clause applies to acts of the legislature and not to an agency's general policies. However, we believe the ex post facto clause does apply to an agency's substantive regulations, which as noted by the Court in *Norristown Area Sch. Dist.,* have the force of law.

**9.** "Mandamus is an extraordinary writ. It will only be granted to compel performance of a ministerial duty where the plaintiff establishes a clear legal right to relief and a corresponding

## ORDER

AND NOW, this 2nd day of November, 1998, Respondent Department of Corrections' preliminary objections are granted and Petitioner Francis E. Weaver's petition in the nature of mandamus and/or prohibition is hereby dismissed.

duty to act by the defendant. Mandamus is not proper to establish legal rights, but is only appropriately used to enforce those rights which have already been established." *Wassell v. Pennsylvania Board of Probation and Parole*, 658 A.2d 466, 468 (Pa.Cmwlth.1995) (citations omitted). In the case *sub judice*, Weaver has failed to demonstrate any clear right to legal relief.