Jerome SILO, Pennsylvania State Prisoner on his own behalf and on behalf of all those similarly situated who were, are, and/or will be [subjected to] the Prison Medical Services Act, the Act of May 16, 1996, Act No. 1996–40, 61 P.S. 1011, et seq. and Act 53 of 1996, —— and [subjected to] the new DC–ADM 820, co–pay for Medical Services Policy, which has been put in place due to the said legislation and which becomes effective as of May 18, 1998, and Jerome Silo, as next friend of PA state prisoners affected by the Prison Medical Services Act and by the DC ADM 820 Policy Abandoned by the Legal Fraternity, Petitioner,

v.

Tom RIDGE, Governor of Pennsylvania; Commonwealth of Pennsylvania; Pennsylvania Department of Corrections; Martin F. Horn, Secretary of Pa. Department of Corrections; and James Price, individually, and in his official capacity of Supt. of SCI at Pittsburgh, Respondents.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 15, 1999.

Decided March 12, 1999.

Jerome Silo, petitioner, pro se.

Mark E. Guzzi, Camp Hill, for respondents.

Before PELLEGRINI, J., LEADBETTER, J., and JIULIANTE, Senior Judge.

JIULIANTE, Senior Judge.

Before the Court are preliminary objections filed on behalf of Respondents Tom Ridge, Governor, the Pennsylvania Department of Corrections (DOC), Martin F. Horn, Secretary of DOC, James Price, individually, and in his capacity of Superintendent of the State Correctional Institution at Pittsburgh, to a petition for review on behalf of Jerome Silo, a state inmate, and those similarly situated (collectively, Silo), seeking a declaratory judgment holding that the Prison Medical Services Act (Act)[1] and DOC's Policy Bulletin DC–ADM 820: Co–Payment for Medical Services (Policy Bulletin)[2] are unconstitutional and invalid.[3] For the reasons set for the below, we grant Respondents' preliminary objections and dismiss Silo's petition for declaratory relief.

I.

The Act established a co-pay program for inmate medical services in the DOC prison system that requires inmates to cover a por-

---

1. Act of May 16, 1996, P.L. 220, 61 P.S. §§ 1011—1017.

2. This Court notes that DOC's Policy Bulletin DC–ADM 820 is not an agency regulation. Rather it is an internal directive to DOC employees. *See Weaver v. Department of Corrections*, 720 A.2d 178, 182 n. 7 (Pa.Cmwlth.1998). However, for purposes of Silo's complaint, we will consider the Policy Bulletin to be synonymous with DOC's regulations promulgated under the Act.

3. Silo also sought injunctive relief in the nature of a temporary restraining order and a rule to show cause. On July 8, 1998, this Court issued an order that denied Silo's request for a rule to show cause and a temporary restraining order on the ground that Silo's right to relief was not clear.

tion of the actual costs of certain medical services provided. The Act also required that DOC develop regulations to implement the inmate co-pay program. Section 3(b) of the Act, 61 P.S. § 1013(b), requires that the regulations must provide for consistent medical services guidelines by specifying the medical services which are subject to fees, the fee amounts, payment procedures, medical procedures which are not subject to fees and fees applicable to medical emergencies, chronic care and preexisting conditions.

DOC promulgated regulations to implement the inmate co-pay program established by the Act. Those regulations became final and effective upon their publication in the May 30, 1998 issue of the *Pennsylvania Bulletin* and are now codified at 37 Pa.Code § 93.12. Pursuant to 45 Pa.C.S. § 905(1) and (2), final publication of the regulations in the *Pennsylvania Bulletin* creates a rebuttable presumption that the regulations were duly promulgated and have been approved as to legality.

In short, the regulations provide that DOC will charge inmates a $2.00 fee for the provision of a limited number of medical services, and two-thirds of the total cost of medical services provided to another inmate as a result of the inmate's assaultive conduct.[4] However, the Act and regulations prohibit denying inmates access to any of the listed medical services because of inability to pay the required fee. DOC has prepared an inmate handbook explaining the Act and the regulations, including an explanation of the program regulations.

Silo, in his declaratory judgment action, asserts that the Act and Policy Bulletin are invalid based on the Eighth and Fourteenth Amendments to the United States Constitution, the Administrative Agency Law, 2 Pa. C.S. §§ 501—754, the constitutional prohibition against ex post facto laws contained in U.S. Const. Art. 1 § 10, the constitutional prohibition against bills of attainder contained in U.S. Const. Art. I., § 9, cl. 3, the Americans with Disabilities Act, 42 U.S.C. §§ 12101—12213 (ADA), the Mental Health and Mental Retardation Act of 1966 (MHMRA),[5] the Mental Health Procedures Act (MHPA)[6] and the "soon to be enacted" Patient's Bill of Rights.[7]

On June 18, 1998, Respondents filed preliminary objections to Silo's declaratory judgment action seeking dismissal of the complaint on the grounds that 1) Silo's complaint fails to conform with the requirements of Pa. R.C.P. No. 1704, which requires that a class action complaint include the designation "Class Action" in the caption; 2) that Silo's declaratory judgment complaint is legally insufficient because he has failed to allege sufficient facts to state an actual controversy; and 3) Silo's declaratory judgment complaint is legally insufficient because it fails to state a cause of action under any of Silo's specific challenges to the Act and DC–ADM 820. "Initially we note that when ruling on preliminary objections, this Court considers as true all well-pleaded facts which are material and relevant." *Giffin v. Chronister*, 151 Pa. Cmwlth. 286, 616 A.2d 1070, 1072 (1992). "Specifically, a preliminary objection in the nature of a demurrer is deemed to admit all well-pleaded facts and all inferences reason-

4. Under the inmate medical service co-pay regulations, DOC would charge an inmate a $2.00 fee for: a) non-emergency medical service provided at the inmate's request; b) medical service, including emergency service, provided to the inmate as a result of self-inflicted injury or illness; c) initial prescriptions, with the exceptions of immunizations, vaccinations, prenatal care and psychotropic medications; d) medical service provided to an inmate as a result of his or her assaultive conduct; e) medical service provided to an inmate as a result of participation in sports; and f) medical service provided to determine whether an inmate can participate in sports. The regulations also require that an inmate who has private health insurance shall pay for his or her own medical needs and that an inmate who injures another inmate by assaultive conduct must pay a fee of (⅔) two-thirds of the injured inmate's medical services. These fees will be deducted from the inmates' personal prison account. *See generally* 37 Pa.Code § 93.12.

5. Act of October 20, 1966, Special Sess., P.L. 96, *as amended*, 50 P.S. §§ 4101—4704.

6. Act of July 9, 1976, P.L. 817, *as amended*, 50 P.S. §§ 7101—7503.

7. No such Act was in existence at the time Silo filed this declaratory judgment action. As a result, any such Act is irrelevant to this matter.

ably deduced therefrom." *Id.* "In determining whether to sustain a demurrer the court need not accept as true conclusions of law, unwarranted inferences from the facts, argumentative allegations, or expressions of opinion." *Id.*

## II.

This Court will first address Respondent's contentions that Silo should be denied declaratory relief because he has failed to allege sufficient facts to state an actual controversy and, alternatively, even assuming *arguendo* that a sufficient controversy has been alleged, that Silo has nevertheless failed to state a cause of action under the law with regard to any of his specific claims. Initially, we note that requests for declaratory relief are governed by the provisions of the Declaratory Judgments Act (DJA), 42 Pa.C.S. §§ 7531—7541.[8]

■ "Declaratory relief is not available unless an actual controversy exists, is imminent or inevitable." *Pennsylvania Turnpike Commission v. Hafer,* 142 Pa.Cmwlth. 502, 597 A.2d 754, 756 (1991). "A declaratory judgment is not appropriate to determine rights in anticipation of events which may never occur but is appropriate where there is imminent and inevitable litigation." *Id.* Without an actual imminent or inevitable controversy, a party lacks standing to maintain a declaratory action. As the Pennsylvania Supreme Court has stated in *William Penn Parking Garage, Inc. v. City of Pittsburgh,* 464 Pa. 168, 192, 346 A.2d 269, 280 (1975), "[t]he core concept, of course, is that a person who is not adversely affected in any way by the matter he seeks to challenge is not 'aggrieved' thereby and has no standing to obtain a judicial resolution of his challenge."

■ In the case at bar, Silo seeks a declaration that the Act and Policy Bulletin are unconstitutional and are otherwise invalid based on various provisions of the United States Constitution, the ADA and several laws of the Commonwealth of Pennsylvania. However, a review of the petition for review in this case establishes that the relief sought is based on nothing more than mere conjecture and speculation. Silo has not alleged that he has or will imminently be adversely affected by the Act or policy. Absent such allegations, Silo lacks proper standing to bring an action under the DJA. *Boyle v. Department of Transportation,* 151 Pa. Cmwlth. 430, 617 A.2d 70 (1992).

Silo's complaint is devoid of any allegations that he has actually sought medical care and was denied such care or was provided with inadequate care as a result of the Act or Policy Bulletin. Moreover, Silo does not allege that his prison account has been wrongfully debited for a medical service or that he was deprived of an opportunity to challenge an assessment that is alleged to be improper. By filing this complaint, Silo has engaged in nothing more than an intellectual exercise without having been adversely affected by the Act and Policy Bulletin that are the subject of his attack; Silo's lack of standing becomes clear through a review of each of his claims.

■ In order to establish that the Act and Policy Bulletin violate the Eighth Amendment, Silo must establish that prison officials were deliberately indifferent to his serious medical needs. *See Helling v. McKinney,* 509 U.S. 25, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993); *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Silo does not claim that he sought treatment for a serious medical need. Nor does he claim that the named officials were deliberately indifferent to a serious medical need. Rather, Silo speculates that prisoners will forego medical treatment to avoid paying a medical service fee or will be denied medical care if inmates refuse to sign an authorization form to debit their accounts. Silo offers no facts that support his speculative assertions.

■ Even assuming that Silo's speculation regarding his Eighth Amendment challenge provides him with sufficient standing,

---

8. *This Court notes that Respondents' brief fails to address the issue of whether Silo's complaint should be dismissed on the basis that he failed to include the term "Class Action" in the caption as* required by Pa. R.C.P. No. 1704. Consequently, the Court will consider this objection to be abandoned and will not address it.

the claim still must fail. Requiring inmates to pay a minimal fee for their medical care does not amount to deliberate indifference to their serious medical needs. *Reynolds v. Wagner,* 128 F.3d 166 (3rd Cir.1997). The Eighth Amendment "does not guarantee prisoners the right to be entirely free from the cost considerations that figure in the medical care decisions made by most non-prisoners in our society." *Id.* at 175.

■ In order to establish that the Act and Policy Bulletin violated his Fourteenth Amendment right to due process, Silo must establish that he has been deprived of life, liberty and property without due process of law. *See* U.S. Const. Amend. XIV, § 1. Silo does not allege that he has actually been deprived of life, liberty or property. Nor does he allege that he was denied the opportunity to challenge any deprivation. Rather, Silo assumes that inmate accounts will be debited without inmates being afforded the opportunity to challenge the assessment. Again, Silo asserts no facts to support his conjecture.

■ Even assuming that Silo's speculation regarding his Fourteenth Amendment challenge provides him with sufficient standing, the claim still must fail. The procedural protections afforded by the due process clause are determined with reference to the particular rights and interests at issue in a case. *Washington v. Harper,* 494 U.S. 210, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990). The factors to be considered include the private interest at stake, the governmental interests, and the value of procedural requirements in that particular context. *Id.* The amount of process due depends on the context presented. *Gilbert v. Homar,* 520 U.S. 924, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997) (due process is flexible and calls for such procedural protections as the particular situation demands).

In essence, Silo asserts the Act and Policy Bulletin DC–ADM 820 lack sufficient notice of what medical services are subject to a fee for procedural due process purposes because the terms "emergency" and "non-emergency" are not affirmatively defined. According to Silo, this lack of a definition gives prison officials unfettered discretion in determining what medical services will be subject to a fee without providing inmates a meaningful way to challenge an assessment alleged to be improper.

■ Silo, as well as all other inmates, may challenge a medical fee assessment through the grievance procedure under 37 Pa.Code § 93.9. With an ability to challenge an assessment through the grievance procedure, due process does not require that inmates be able to challenge the assessment at the time of the medical services are requested. *See Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) (where state provides adequate post deprivation remedy there is no violation of an inmate's due process rights). The term "emergency" is not obscure and like the county prison medical services co-pay plan in *Reynolds,* "inmates know that they will never be denied care even if they do not have enough money and the condition for which treatment is sought does not fit into one of the fee-exempt categories." *Reynolds,* 128 F.3d at 177.

■ Furthermore, in order to establish that the Act and Policy Bulletin violate the Administrative Agency Law, Silo must establish that Respondents rendered an adjudication. *See* 2 Pa.C.S. § 504. Again, Silo alleges no facts upon which this Court can determine that Respondents issued an adjudication for purposes of this challenge. Silo has not alleged that Respondents have rendered a decision to debit Silo's account for the provision of a medical service. Nor has Silo asserted that a decision was made to deny him medical care pursuant to the Act and Policy Bulletin. Silo once again merely speculates as to what might happen if Silo chooses a particular course of action.

■ Even assuming that Silo's speculation regarding his Administrative Agency Law challenge provides him with sufficient standing, the claim still must fail. In order to state a viable challenge under the Administrative Agency Law, Silo must establish that fee assessments or decisions regarding how to proceed in response to a request for medical care are adjudications of the Department, and that the inmate was not afforded

reasonable notice of a hearing and an opportunity to be heard. *See* 2 Pa.C.S. § 504. Such determinations are not adjudications for purposes of the Administrative Agency Law. *Accord Ricketts v. Central Office Review Committee of the Department of Corrections,* 125 Pa.Cmwlth. 670, 557 A.2d 1180 *petition for allowance of appeal denied,* 524 Pa. 636, 574 A.2d 75 (1989) (misconduct decisions are not adjudications).

Silo's lack of standing is most acute regarding his claims under the ADA, MHMRA and MHPA. Silo has not alleged any facts that establish that he suffers from any type of physical or mental disability that would entitle him to the protections afforded by the ADA, MHMRA and MHPA. This Court will not accept as fact Silo's mere expressions of opinion, argumentative allegations and unwarranted inferences. *Giffin.* Without adequate factual allegations it is clear that Silo cannot establish that the Act and Policy Bulletin present a direct, immediate and substantial injury to his rights under those statutes. As a result, we must conclude that declaratory relief is inappropriate under the circumstances in the case *sub judice.*

### III.

Silo also contends that the Act and Policy Bulletin are unconstitutional based on the prohibition against ex post facto laws in U.S. Const. Art. I, § 10, and the prohibition against bills of attainder in U.S. Const. Art. I, § 9. In *Weaver v. Department of Corrections,* 720 A.2d 178 (Pa.Cmwlth.1998), this court recently rejected the argument that the Act and the Policy Bulletin violate the constitutional prohibition against ex post fact laws. In *Weaver,* the Court stated:

> The ex post facto prohibition forbids the Congress and the States to enact any law 'which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.' *Weaver v. Graham,* 450 U.S. 24, 28, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981) (quoting *Cummings v. Missouri,* 4 Wall. 277, 325–326, 18 L.Ed. 356 (1866)); *see also Stewart v. Pennsylvania Board of Probation and Parole,* 714 A.2d 502 (Pa.Cmwlth.1998) (ex post facto

clause permits individuals to go about their business without being afraid of being punished for an act that was not prohibited by law at the time it was committed).

Moreover, the ex post facto clause "has been interpreted to pertain *exclusively to penal statutes.*" *Kansas v. Hendricks,* 521 U.S. 346, 370, 117 S.Ct. 2072, 2086, 138 L.Ed.2d 501 (1997) (emphasis added). Specifically, the clause "is aimed at laws that 'retroactively alter the definition of crimes or increase the punishment for criminal acts.'" *California Department of Corrections v. Morales,* 514 U.S. 499, 504, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995) (citing *Collins v. Youngblood,* 497 U.S. 37, 43, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990)).

In *Weaver v. Graham,* the Supreme Court recognized that two essential elements must be present in order for a criminal or penal law to be ex post facto: "it must be *retrospective, that is, it must apply to events occurring before its enactment,* and it must disadvantage the offender affected by it." 450 U.S. at 29, 101 S.Ct. 960, 67 L.Ed.2d 17 (emphasis added). In the case at bar, neither the Medical Services Act nor the regulations promulgated thereunder are penal in nature. They do not criminalize any type of conduct that was legal before their enactment nor do they deprive a criminal defendant of any defense that was available to him at the time of his alleged crime. Rather, under the Act and regulations, fees are imposed upon inmates for certain non-emergency medical services in order to reduce government costs in providing those services.

Even assuming *arguendo* that the Medical Services Act and regulations could be considered penal in nature, they did not become enforceable until published and apply only prospectively, not retrospectively. As such, we reject Weaver's contention that either the Medical Services Act or the regulations promulgated thereunder by DOC violate the ex post facto prohibition in U.S. Const. Art. I, § 10. *Morales; Weaver v. Graham.*

720 A.2d at 182.

In view of our decision in *Weaver,* we reject Silo's contention that either the Act

or the Policy Bulletin violates the constitutional prohibition against ex post facto laws.

■ We further reject Silo's contention that the Act and Policy Bulletin violate the constitutional prohibition against bills of attainder. A "bill of attainder is 'a legislative enactment which determines guilt and inflicts punishment upon an identifiable person or group without a judicial trial.'" *Shultz v. Workmen's Compensation Appeal Board (Leroy Roofing Co.)*, 154 Pa.Cmwlth. 34, 621 A.2d 1239, 1242 (1993), *petition for allowance of appeal denied*, 539 Pa. 672, 652 A.2d 841 (1994). The Act and Policy Bulletin do not determine guilt or impose punishment on the inmates. Rather, they simply require that inmates pay a small fee for the provision of certain medical services. The $2.00 fee is imposed regardless of whether an inmate is legitimately seeking medical treatment or is abusing the prison's sick call procedures.

## IV.

In view of the foregoing, we conclude that Silo is not entitled to declaratory relief because 1) his complaint fails to allege an actual case or controversy between himself and Respondents as required by the DJA; and 2) even assuming Silo did establish the required case or controversy, his complaint nevertheless fails to state a cause of action under the law with regard to any of his specific claims. Accordingly, we sustain Respondents' preliminary objections and dismiss Silo's complaint.

### *ORDER*

AND NOW, this 12th day of March, 1999, Respondents' Preliminary Objections are sustained and Petitioner's Complaint seeking Declaratory Judgment is hereby dismissed.