IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ronald Jackson,                                   :
                    Appellant                     :
                                                  :
          v.                                      :     No. 365 C.D. 2018
                                                  :     Submitted: July 5, 2019
SCI Huntingdon Prison Officials;                  :
Sergeant Grove; CO Mainello;                      :
CO Pyle; Super. Kevin Kauffman;                   :
Hearing Examiner Ellenberger, et al.              :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE ROBERT SIMPSON, Judge[1]
           HONORABLE MICHAEL H. WOJCIK, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT                          FILED: November 18, 2019

          Ronald Jackson, *pro se*, appeals an order of the Court of Common Pleas
of Huntingdon County (trial court), which denied his petition to proceed *in forma
pauperis* and dismissed as frivolous his civil action and request for injunctive relief
against the Commonwealth and various employees at the State Correctional
Institution (SCI) at Huntingdon (Prison Officials).  On appeal, Jackson contends that
he should be permitted to proceed *in forma pauperis* and that the trial court erred in
dismissing his action.  For the reasons that follow, we affirm.

          On February 5, 2018, Jackson initiated a civil action against the
Commonwealth and Prison Officials.[2]  Along with the civil cover sheet, Jackson
filed three documents titled "Summons," "Memorandum of Law in Support of

---

[1] This matter was assigned to this panel before September 1, 2019, when Judge Simpson assumed
the status of senior judge.

[2] In filing his appeal, Jackson did not list the Commonwealth as an appellee.

Claimant's Motion for a Temporary Restraining Order and Preliminary Injunction" and "Declaration in Support of Order to Show Cause for Temporary Restraining Order and Preliminary Injunction." Original Record (O.R.), Item No. 1. These documents alleged that Prison Officials deprived Jackson of his property without due process of law by withdrawing medical co-payments from his inmate account. The documents also alleged that Prison Officials denied Jackson the opportunity to see a podiatrist. Jackson further alleged that Prison Officials retaliated against him for filing grievances. The trial court treated these documents as Jackson's "action." Trial Court Opinion, 9/20/2018, at 2. On February 22, 2018, Jackson filed a petition to proceed *in forma pauperis*.

On March 5, 2018, the trial court dismissed Jackson's action as frivolous pursuant to Pennsylvania Rule of Civil Procedure No. 240(j)(1). Jackson appealed to this Court, and the trial court issued an opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a)(1). The trial court stated that Jackson's pleading "consist[ed] of a hodgepodge of disjointed averments" that were "extremely difficult to read." Trial Court Opinion, 9/20/2018, at 2.[3] The trial court explained that although Jackson appeared dissatisfied with the prison's policies, it was not the role of the court to interfere with those policies or their enforcement. Citing *Bronson v. Central Office Review Committee*, 721 A.2d 357, 358-59 (Pa. 1998), the trial court stated it would not rule on issues related to inmate grievances and misconduct appeals. Accordingly, the trial court dismissed Jackson's action as frivolous.

---

[3] The trial court noted that on March 9, 2018, Jackson filed an additional pleading entitled "Complaint pursuant to Civil Action." Trial Court Opinion, 9/20/2018, at 2. Because Jackson's appeal related only to the trial court's March 5, 2018, order dismissing his action, the trial court did not consider filings after that date.

On appeal,[4] Jackson contends that the trial court erred. He asserts that his complaint stated a legally cognizable cause of action against Prison Officials that was not frivolous.

At issue here is the trial court's application of Pennsylvania Rule of Civil Procedure 240(j)(1), which governs a party's right to proceed *in forma pauperis*. It states:

> If, simultaneous with the commencement of an action or proceeding or the taking of an appeal, a party has filed a petition for leave to proceed *in forma pauperis*, the court prior to acting upon the petition may dismiss the action, proceeding or appeal if the allegation of poverty is untrue or if it is satisfied that the action, proceeding or appeal is frivolous.

PA. R.C.P. NO. 240(j)(1). A frivolous action or proceeding has been defined as one that "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Under Rule 240(j)(1), an action is frivolous if, on its face, it does not set forth a valid cause of action. *Jones v. Doe*, 126 A.3d 406, 408 (Pa. Cmwlth. 2015). With these principles in mind, we consider whether the trial court erred in concluding that Jackson's action was frivolous.[5]

In his filings with the trial court, Jackson alleged that he had been harassed by corrections officers Mainello, Pyle and Grove in retaliation for filing grievances. When claiming retaliation, "a state prison inmate must show he suffered some adverse action by prison officials in retaliation for engaging in constitutionally protected conduct." *Wilson v. Marrow*, 917 A.2d 357, 364 (Pa. Cmwlth. 2007). An

---

[4] In reviewing the trial court's decision, we must determine whether constitutional rights have been violated, the trial court abused its discretion, or the trial court committed an error of law. *Bailey v. Wakefield*, 933 A.2d 1081, 1083 n.4 (Pa. Cmwlth. 2007).

[5] Prison Officials elected not to file a brief in this matter.

3

inmate can satisfy this burden by showing that "the action taken by officials was sufficient to deter a person of ordinary firmness from exercising his constitutional rights." *Id.* at 364 (quoting *Yount v. Department of Corrections*, 886 A.2d 1163 (Pa. Cmwlth. 2005)). Jackson did not allege that the officers took adverse action to deter him from filing a grievance, nor did he allege specific facts describing the allegedly retaliatory conduct of the officers. Accordingly, the trial court did not err in dismissing this portion of Jackson's action as frivolous.

Jackson also alleged that he was denied medical care in violation of the Eighth Amendment's protection against cruel and unusual punishment.[6] Jackson asserted that his condition, an ingrown toenail, required treatment by a podiatrist, which Prison Officials denied to him.

To state a claim under the Eighth Amendment, an inmate "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Tindell v. Department of Corrections*, 87 A.3d 1029, 1038 (Pa. Cmwlth. 2014). "Whether the medical need of an inmate is sufficiently serious to constitute an injury amounting to cruel and unusual punishment is an objective inquiry." *Id.* Additionally, "a prisoner must also allege acts or omissions that evidence deliberate indifference on the part of prison officials in order to state a cognizable claim that the prisoner's constitutional right to be free from cruel and unusual punishment has been violated." *Id.* at 1039. A prisoner must establish that: "(i) the prison official knew of and disregarded an excessive risk to inmate health or safety; (ii) the prison official was aware of facts from which an inference could be

---

[6] The Eighth Amendment prohibits the government from inflicting "cruel and unusual punishments." U.S. CONST. amend. VIII.

4

drawn that a substantial risk of serious harm exists; and (iii) the prison official drew the inference." *Id.* (internal footnote omitted).

Here, Jackson did not allege that he was not seen by medical staff or that they acted with "deliberate indifference" to his medical needs. More specifically, Jackson did not allege that Prison Officials were aware of his medical condition and acted in a manner to prevent him from receiving medical treatment. Instead, he alleged that the prison physicians did not refer him to a podiatrist. This Court has explained that it will reject any attempts to undermine or question the adequacy of treatment conducted by medical professionals, which "remains a question of sound professional judgment." *Kretchmar v. Commonwealth*, 831 A.2d 793, 799 (Pa. Cmwlth. 2003) ("Complaints about medical care which merely reflect a disagreement with the doctors over the proper means of treating the prisoner's medical condition do not rise to the level of a constitutional violation.") (internal quotation marks omitted). Similarly, here, Jackson's disagreement with Prison Officials over the treatment of his ingrown toenail cannot form the basis of an Eighth Amendment claim. Accordingly, because Jackson failed to state a claim under the Eighth Amendment, the trial court did not err by dismissing his claim as frivolous.

Jackson asserted to the trial court that Prison Officials violated a Department of Corrections Administrative Directive, DC-ADM 820, by deducting co-payments for medical services from his inmate account without advance notice. Jackson also argued that his right to due process guaranteed by the Fourteenth Amendment[7] was violated when he was not given notice of the charges to his inmate account or the opportunity to dispute them.

_____

[7] Section 1 of the Fourteenth Amendment states, in relevant part:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person

In *Silo v. Ridge*, 728 A.2d 394, 399 (Pa. Cmwlth. 1999), an inmate challenged co-payment deductions made from his inmate account. Specifically, the inmate alleged that deductions were made without giving inmates the opportunity to challenge the validity of the deduction. This Court held that the inmate's complaint did not state a due process claim because he could challenge the charges to his inmate account through the inmate grievance procedure in 37 Pa. Code §93.9.[8] The same is true in this case. Accordingly, we hold that the trial court did not err in dismissing Jackson's claim as frivolous.

Next, we address Jackson's assertion that Prison Officials violated the due process clause of the Fourteenth Amendment by charging him a co-payment for a chronic medical concern. The Correctional Institution Medical Services Act (Act), 61 Pa. C.S. §§3301-3307, and the Department's regulations codified at 37 Pa. Code §93.12,[9] establish the Medical Services Program for inmates. The program requires

---

of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. CONST. amend. XIV, §1.

[8] It provides:

(a) The Department will maintain an inmate grievance system which will permit any inmate to seek review of problems which the inmate experiences during the course of confinement. The system will provide for review and resolution of inmate grievances at the most decentralized level possible. It will also provide for review of the initial decision making and for possible appeal to the Central Office of the Department. An inmate will not be disciplined for the good faith use of the grievance systems. However, an inmate who submits a grievance for review which is false, frivolous or malicious may be subject to appropriate disciplinary procedures. A frivolous grievance is one in which the allegations or the relief sought lack any arguable basis in fact as set forth in DC-ADM 804--Inmate Grievance System, which is disseminated to inmates.

(b) Inmates may also pursue available remedies in State and Federal court.

37 Pa. Code §93.9.

[9] Section 93.12 of the Department's regulations details the application of the Medical Services Program.

6

"inmates to pay a fee to cover a portion of the actual costs of the medical services provided." 61 Pa. C.S. §3303(a). Based on the Department's Administrative Directive, DC-ADM 820, an inmate is required to pay a $5.00 co-payment for any non-emergency medical service provided at the inmate's request. DC-ADM 820 at Section 1-1.[10] An inmate is not charged when he receives "medical treatment for a chronic medical disease/illness requiring regular return and/or *continuous* visits, as specified by the medical provider." *Id.* (emphasis in original). The policy provides several examples of "chronic" medical conditions, including asthma, congestive heart failure, coronary artery disease, diabetes, dyslipidemia, hepatitis C, HIV and hypertension.

Jackson's illness, an ingrown toenail, is not included in the Department's list, and he does not allege any facts to show it is a chronic illness. Therefore, Jackson failed to state a legally cognizable claim under the Fourteenth Amendment, and the trial court did not err in concluding that this claim was frivolous.

In *Portalatin v. Department of Corrections*, 979 A.2d 944 (Pa. Cmwlth. 2009), the inmate alleged that the co-payments assessed against his prison account affected his protected personal and property interests. We explained that "only those regulations that impose atypical sanctions and significant hardships when compared to the normal incidents of prison life implicate a constitutional right." *Id*. at 949. We held that the co-payment program did not impose such atypical and significant hardships as to implicate a constitutional right because any right "to be free of co-payments is not of constitutional dimension" and is "limited by [Department]

___

[10] Policy 820 is available at www.cor.pa.gov (follow "About Us" hyperlink, then follow "DOC Policies" hyperlink and select "820 Co-Payment for Medical Services") (last visited October 29, 2019).

regulations." *Id.* In short, "[t]here is no constitutional right to free medical services and prescription medicine." *Id.*

Lastly, we address the trial court's denial of Jackson's request for an injunction directing Prison Officials to arrange for a podiatrist to treat his ingrown toenail.[11] Jackson's request for injunctive relief repeated many of the arguments addressed above, including his vague allegations of constitutional violations. In essence, Jackson complains that he has to depend on Prison Officials for medical care because he is not permitted to have a toenail clipper in the Restrictive Housing Unit.

A party seeking injunctive relief must establish that "his right to relief is clear, that an injunction is necessary to avoid an injury that cannot be compensated by damages, and that greater injury will result from refusing rather than granting the relief requested." *Buehl v. Beard*, 54 A.3d 412, 419 (Pa. Cmwlth. 2012). Injunctive relief may not be granted where an adequate remedy exists at law. *Id.* at 419-20.

Jackson's pleading did not establish a clear legal right to relief, *i.e.*, the right to see a podiatrist for the treatment of his ingrown toenail. Further, this Court has held that "the operation of correctional facilities is peculiarly within the province of the legislative and executive branches of the government and not the judicial branch." *Robson v. Biester*, 420 A.2d 9, 12 (Pa. Cmwlth. 1980); *Kretchmar*, 831 A.2d at 799 ("[I]t is not in the public's interest for the court to usurp the [Department's] authority and micro-manage the medical needs of a particular inmate."). Therefore, the trial court did not err in dismissing as frivolous Jackson's request for injunctive relief.

_____

[11] On July 25, 2018, this Court denied a different motion for injunctive relief, by which Jackson sought an order enjoining the Prison Officials from violating prison mail policies and from holding Jackson in administrative custody.

8

Accordingly, we affirm the trial court's dismissal of Jackson's action as frivolous.

_____
MARY HANNAH LEAVITT, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ronald Jackson,                                    :
                        Appellant                  :
                                                   :
              v.                                   :     No. 365 C.D. 2018
                                                   :
SCI Huntingdon Prison Officials;                   :
Sergeant Grove; CO Mainello;                       :
CO Pyle; Super. Kevin Kauffman;                    :
Hearing Examiner Ellenberger, et al.               :

# **O R D E R**

AND NOW, this 18th day of November, 2019, the order of the Court of Common Pleas of Huntingdon County dated March 5, 2018, in the above-captioned matter is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge