**Wilfredo PORTALATIN, Petitioner**

v.

**DEPARTMENT OF CORRECTIONS, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 8, 2009.
Decided Aug. 10, 2009.

Wilfredo Portalatin, petitioner, pro se.

Jeffrey M. Paladina, Asst. Counsel and Suzanne N. Hueston, Chief Counsel, Camp Hill, for respondent.

BEFORE: LEADBETTER, President Judge, and SIMPSON, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge SIMPSON.

Before this Court in our original jurisdiction are the preliminary objections of the Department of Corrections (DOC) to a petition for review in the nature of a complaint seeking declaratory judgment filed by Wilfredo Portalatin (Portalatin), an inmate serving a life sentence at a state correctional institution. Portalatin seeks a declaration that DOC's assessment of co-pay fees for treatment of his chronic skin condition violates the Prison Medical Services Act [1] (Act) and DOC regulations prohibiting charges for medical treatment of chronic conditions and prescription refills for those conditions.[2] Portalatin also seeks to appeal DOC's denial of his grievance challenging the co-pay assessments deducted from his prison account. DOC contends this Court lacks both original and appellate jurisdiction over this matter. DOC further contends Portalatin's petition fails to state a colorable claim under the Act or 37 Pa.Code § 93.12. We sustain DOC's preliminary objections and dismiss Portalatin's petition.

## I. Petition

### A. Declaratory Judgment

In "Count One Original Jurisdiction," Portalatin alleges as follows. He began to suffer from tinea versicolor (TV) [3] prior to his incarceration. In June 1996, DOC's Diagnostic and Classification Center diagnosed Portalatin with this skin condition. Following his 1996 diagnosis, Portalatin was treated for TV without being assessed a co-pay fee. Sometime thereafter, DOC began assessing Portalatin's prison account co-pay fees for his TV treatment.[4]

Portalatin further alleges, pursuant to 37 Pa.Code § 93.12(d)(7), DOC is prohibited from charging a fee to an inmate for a chronic or intermittent disease or illness. Pursuant to 37 Pa.Code § 93.12(d)(16), DOC is prohibited from charging a fee for prescription refills provided to an inmate for the same illness or condition. Dorland's Illustrated Medical Dictionary (29th ed.2000) defines TV as a common chronic disorder. *Id.* at 1843. A National Institute of Health website, *medlineplus.gov,* defines TV as a chronic fungal infection of the skin. TV can also be classified as an intermittent disease or illness.

Portalatin also alleges as follows. Despite the Act and 37 Pa.Code §§ 93.12(d)(7) and (16), DOC repeatedly assessed him co-pay fees for his TV treatment and medication. DOC continues to interpret and enforce the Act and the regulations in a manner contrary to their language. DOC denied Portalatin's grievance and subsequent appeals protesting the co-pay fees. *See* Pet. for Review, Ex. A. DOC refuses to refund the co-pay fees assessed.

Based on these allegations, Portalatin seeks a declaration that he is entitled to compensation for all co-pay fees assessed against him for the treatment of his chron-

---

1. Act of May 16, 1996, P.L. 220, *as amended,* 61 P.S. §§ 1011–17.

2. *See* 37 Pa.Code §§ 93.12(d)(7) and (16).

3. TV is defined as "an eruption of tan or brown branny patches on the skin of the trunk, often appearing white, in contrast with hyperpigmented skin after exposure to the summer sun; caused by growth of the fungus *Malassezia furfur* in the stratum corneum with minimal inflammatory reaction." Stedman's Medical Dictionary 1837 (27th ed.2000).

4. As of July 1, 2007, the co-pay fee for any medical service became $5.00. *See* 37 Pa. Code § 93.12(e).

ic and intermittent skin disorder, as well as litigation costs. Portalatin also seeks to enjoin DOC from assessing any further fees for treatment.

## B. Appeal

In "Count Two Appellate Jurisdiction," Portalatin contends this Court has appellate jurisdiction over DOC's denial of his grievance. He attaches DOC's grievance and grievance appeal determinations in this matter to his petition for review as Exhibit A. Portalatin asserts DOC's determinations upholding the co-pay charges as appropriate are contrary to Section 3 of the Act[5] and 37 Pa.Code §§ 93.12(d)(7) and (16).

## II. Preliminary Objections

In response to Portalatin's petition, DOC raises the following preliminary objections. First, the matter does not fall within our original jurisdiction because it does not involve any constitutional rights not limited by DOC. *See Bronson v. Cent. Office Review Comm.*, 554 Pa. 317, 721 A.2d 357 (1998) (unless an inmate can identify a personal or property interest not limited by DOC regulations and affected by a final DOC decision, the challenged decision is not an adjudication subject to Commonwealth Court review); *Weaver v. Pa. Dep't of Corr.*, 829 A.2d 750 (Pa. Cmwlth.2003) (same). Second, this Court lacks appellate jurisdiction because fee assessments for medical care and inmate grievance decisions are not government agency adjudications appealable to this Court. *Bronson; Silo v. Ridge*, 728 A.2d 394 (Pa.Cmwlth.1999). Third, Portalatin's petition fails to state a colorable claim because the imposition of a medical co-payment for treatment of TV does not violate either the Act or the attendant regulations. DOC asserts its Policy Bulletin DC–ADM 820 (Policy 820) further regulating the co-payment program is consistent with both Section 3 of the Act and 37 Pa.Code §§ 93.12(d)(7) and (16).

When ruling on preliminary objections in the nature of a demurrer, this Court considers as true all well-pled facts that are material and relevant. *Silo; Giffin v. Chronister*, 151 Pa.Cmwlth. 286, 616 A.2d 1070 (1992). More specifically, a preliminary objection in the nature of a demurrer is deemed to admit all well-pled facts and all inferences reasonably deduced from those facts. *Id.* In determining whether to sustain a demurrer the court need not accept as true conclusions of law, unwarranted inferences from the facts, argumentative allegations, or expressions of opinion. *Id.*

## III. Discussion

DOC maintains this Court lacks original and appellate jurisdiction over Portalatin's claim that DOC made erroneous deductions from his prison account for medical

---

**5.** Section 3 of the Act, 61 P.S. § 1013, pertinently provides:

(a) **Establishment.**—The Prison Medical Services Program is established in the [DOC] which shall include, but not be limited to, the provisions of this act. This program shall be a copay program requiring inmates to pay a fee to cover a portion of the actual costs of the medical services provided.

(b) **Fees.**—[DOC] shall develop by regulation a program for inmates which includes fees for certain medical services. The regulations shall provide for consistent medical services guidelines by specifying the medical services which are subject to fees, the fee amounts, payment procedures, medical services which are not subject to fees and fees applicable to medical emergencies, chronic care and preexisting conditions. In addition to other medical services provided to the inmate, an inmate may be required to pay a fee for medical services provided because of injuries the inmate inflicted upon himself or another inmate.

co-pay fees. In support, DOC cites *Bronson* and *Silo.* In addition, DOC asserts Portalatin fails to state a cognizable claim because Policy 820, which limits the definition of chronic illness or disease to several specific conditions other than TV, does not contradict either Section 3 of the Act or 37 Pa.Code § 93.12(d).

On the question of jurisdiction, *Bronson v. Cent. Office Review Comm.,* 554 Pa. 317, 721 A.2d 357 (1998) is instructive. In *Bronson* our Supreme Court addressed confiscation of inmate civilian clothing. The Court held the Commonwealth Court does not have *appellate* jurisdiction over inmate appeals of decisions by intra-prison disciplinary tribunals, such as grievance and misconduct appeals. The Court said:

> [I]nternal prison operations are more properly left to the legislative and executive branches, and ... prison officials must be allowed to exercise their judgment in the execution of policies necessary to preserve order and maintain security free from judicial interference. [*See Robson v. Biester,* 53 Pa.Cmwlth. 587, 420 A.2d 9, 12 (1980) ] (citing *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)). We agree. Unlike the criminal trial and appeals process where a defendant is accorded the full spectrum of rights and protections guaranteed by the state and federal constitutions, and which is necessarily within the ambit of the judiciary, the procedures for pursuing inmate grievances and misconduct appeals are a matter of internal prison administration and the "full panoply of rights due a defendant in a criminal prosecution is not necessary in a prison disciplinary proceeding...." [*Robson,* 420 A.2d at 12] (citing *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)).

*Id.* at 321, 721 A.2d at 358–59.

Also, the Supreme Court held the Commonwealth Court usually does not have *original* jurisdiction over an inmate's petition for review after a grievance proceeding. The Court held that original jurisdiction was not available "in a case not involving constitutional rights not limited by the [DOC]." *Id.* at 323, 721 A.2d at 359. Noting that prison inmates do not enjoy the same level of constitutional protections afforded to non-incarcerated citizens, the Court concluded that an attempt to color the confiscation as a constitutional deprivation would fail. "Unless 'an inmate can identify a personal or property interest ... not limited by [DOC] regulations and which has been affected by a final decision of the department' the decision is not an adjudication subject to the court's review." *Id.* at 323, 721 A.2d at 359 (citation omitted).

In addition, DOC asserts that even if the withdrawal of funds from Portalatin's prison account implicates a protected property interest, DOC's inmate grievance system procedure provided him with adequate due process to challenge the determination that TV is not a chronic or intermittent condition. *Silo.*

In response, Portalatin counters that DOC's decision to assess him a fee for the treatment of his skin disorder constitutes an "adjudication" under the Administrative Agency Law, 2 Pa.C.S. §§ 501–08, 701–04. That act defines an "adjudication" as "[a]ny final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding in which the adjudication is made." 2 Pa.C.S. § 101.

Portalatin acknowledges that inmate grievances are internal prison management matters not usually subject to appellate review. However, Portalatin argues that the co-pay fees assessed against his

prison account affect protected personal and property interests not limited by DOC's regulations. Portalatin contends 37 Pa.Code § 93.12(d)(7), which prohibits DOC from charging a fee for treatment of chronic or intermittent disease or illness, is mandatory in nature and does not vest prison officials with discretion in its implementation. Therefore, 37 Pa.Code § 93.12(d), by its non-discretionary language, confers a state-created liberty interest not to be charged for the treatment of a chronic or intermittent disease. Portalatin asserts TV is such a disease. Portalatin also contends he has a property interest in the funds held in his prison account. *Reynolds v. Wagner,* 128 F.3d 166 (3d Cir.1997).

We disagree. There is no constitutional right to free medical services and prescription medicine. Here, however, Portalatin claims such a right based on DOC regulations stating it will not charge inmates co-payments for medical services and prescriptions arising from a chronic or intermittent condition.

In *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the United States Supreme Court refocused its analysis of whether prison regulations give rise to enforceable rights. The Court shifted the focus of the liberty interest inquiry from the language of the particular regulation to the nature of the deprivation. *Id.* at 481–84, 115 S.Ct. 2293.

In *Sandin,* the Court considered whether liberty interests were created by prison regulations relating to disciplinary confinement. The Court determined that a state-created liberty interest could arise only when a prison's action imposed an "atypical and significant hardship on the inmate

in relation to the ordinary incidents of prison life." *Id.* at 484, 115 S.Ct. 2293. The Court went on to point out that the punishment of incarcerated prisoners serves the aim of effectuating prison management and prisoner rehabilitative goals and that discipline by prison officials in response to misconduct is within the expected parameters of the prisoner's sentence. The Court found that the prisoner's placement in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest.

 Construing *Sandin,* this Court holds that only those regulations that impose atypical sanctions and significant hardships when compared to the normal incidents of prison life implicate a constitutional right. *Luckett v. Blaine,* 850 A.2d 811 (Pa.Cmwlth.2004) (inmate's temporary residence in disciplinary custody did not violate his due process rights). Portalatin does not aver, nor can he aver, that the regulations and policy statements detailing the co-payment program here impose such atypical and significant hardships as to implicate a constitutional right. Because any right Portalatin may have to be free of co-payments is not of constitutional dimension, and because any right Portalatin has is limited by DOC regulations and policy statements, this Court does not enjoy original jurisdiction over the case. *Bronson; Weaver.*

 Similarly, this Court does not have appellate jurisdiction over inmate appeals from grievance tribunals. *Id.* Thus, this Court does not enjoy appellate jurisdiction over this case.[6]

---

6. The inmate grievance system available to challenge the assessment of co-pay fees provides adequate due process for any state-based claims Portalatin may have. Here,

Portalatin filed a grievance challenging the determination that TV is not a chronic condition for purposes of 37 Pa.Code §§ 93.12(d)(7) and (16). *See* Pet. for Review,

■ Finally, we reject the basic premise of Portalatin's claim, that DOC is committing an error of law in its ongoing interpretation of the Act and the regulations. Section 3(a) of the Act directs DOC to establish a co-pay program for medical services provided to inmates. 61 P.S. § 1013(a). The purpose of this program is to require inmates to cover a portion of the actual costs of the medical services provided. *Id.* Section 3(b) requires that DOC develop by regulation a program with consistent medical services guidelines specifying the services subject to fees, the fee amounts, the payment procedures and the services not subject to fees. 61 P.S. § 1013(b).

DOC regulations at 37 Pa.Code § 93.12 (relating to the Prison Medical Services Program) provide as follows:

(c) [DOC] will charge a fee to an inmate for any of the following:

(1) Nonemergency medical service provided to an inmate at the inmate's request.

\* \* \*

(d) [DOC] will not charge a fee to an inmate for any of the following:

\* \* \*

(7) Medical treatment for a chronic or intermittent disease or illness.

\* \* \*

(16) Medication prescription subsequent to the initial medication prescription provided to an inmate for the same illness or condition.

Ex. A. A grievance officer denied the grievance, noting TV is not defined as a chronic condition in Policy 820. *Id.* Portalatin appealed to the Superintendent of SCI–Houtzdale. *Id.* After reviewing Policy 820, the Superintendent concurred with the grievance officer that TV is not defined in Policy 820 as

Further, in Policy 820, DOC establishes a co-pay fee (currently $5) for any non-emergency medical service provided at the inmate's request. DC–ADM 820 at V(A)(1)a. Policy 820 also provides that no fee will be charged for a chronic disease or illness that requires return or regular visits and for prescription refills for the same chronic illness or condition. *Id.* at V(A)(2)(g) and (p). However, Policy 820 provides the following definition of a chronic medical disease or illness:

*Chronic Medical Diseases/illness are defined as: Asthma, Congestive Heart Failure, Coronary Artery Disease, Diabetes, Dislipidemia, Hepatitis C, HIV and Hypertension*

*Id.* at III(G).

■ Nothing in Section 3(b) of the Act or 37 Pa.Code § 93.12(d)(7) states that DOC may not charge a co-pay fee for *any* chronic illness or disease. Policy 820 limits its definition of a "chronic medical disease/illness" to asthma, congestive heart failure, coronary artery disease, diabetes, dislipidemia, hepatitis C, HIV, and hypertension. DC–ADM 820 at III(G). Although Portalatin contends this definition is too narrow, DOC's interpretation of its own regulations is entitled to controlling weight. *Dep't of Pub. Welfare v. Forbes Health Sys.*, 492 Pa. 77, 422 A.2d 480 (1980). Unless plainly erroneous or inconsistent with the statute and the regulation, DOC's interpretation must be upheld. *Id.*

DOC's interpretation is not plainly erroneous or inconsistent with Section 3(b) of the Act or 37 Pa.Code § 93.12(d)(7). Section 3(b) of the Act merely requires DOC

a chronic medical disease. *Id.* Portalatin then appealed to the Secretary's Office of Inmate Grievances and Appeals, which reviewed the record and determined the responses at the institutional level were reasonable and appropriate in accordance with DOC's policy and procedure. *Id.*

to provide guidelines specifying which medical services are subject to fees and which are not. Section 3(b) does not require DOC to exempt treatment of all chronic conditions from co-pay fees. Similarly, 37 Pa.Code § 93.12(d)(7) does not prohibit DOC from assessing co-pay fees for any and all chronic or intermittent conditions. The chronic conditions listed in Policy 820 are significant disorders which may be accompanied by serious symptoms and death. By listing the conditions considered to be chronic for purposes of the co-pay program, DOC fulfilled its duty under Section 3(b) to inform prisoners seeking treatment whether a co-pay fee will be assessed.

For these reasons, DOC preliminary objections are sustained, and Portalatin's petition for review is dismissed.

### ORDER

AND NOW, this 10th day of August, 2009, the preliminary objections of the Department of Corrections are **SUSTAINED** and Petitioner's petition for review is **DISMISSED.**