IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Darren R. Gentilquore,      :
                 Petitioner :
                            :
      v.                    : No. 45 M.D. 2021
                            : Submitted: September 11, 2024
Pennsylvania Department of  :
Corrections,                :
                 Respondent :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE LORI A. DUMAS, Judge
           HONORABLE STACY WALLACE, Judge


OPINION BY
JUDGE DUMAS                              FILED:  October 29, 2024


        Darren R. Gentilquore (Petitioner) has *pro se* filed a petition for review in this Court's original jurisdiction, challenging procedures adopted by the Department of Corrections (the Department) to administer its medical services program. In response, the Department has filed preliminary objections in the nature of a demurrer, but the Department also cites *Portalatin v. Pennsylvania Department of Corrections*, 979 A.2d 944 (Pa. Cmwlth. 2009), in which this Court determined that similar due process claims were outside this Court's original jurisdiction. Upon review, we agree with the Department's reliance on *Portalatin* and conclude that Petitioner has failed to invoke this Court's original jurisdiction. Accordingly, we

dismiss the petition for review. Because we lack jurisdiction, we dismiss the Department's preliminary objections as moot.

## I. BACKGROUND[1]

Petitioner is a state inmate held by the Department.[2] He suffers from type-2 diabetes and, in August 2020, developed complications associated with his condition. Upon informing prison medical staff that his left foot and ankle had turned purple, staff directed Petitioner to sign up for a sick call. The form for requesting treatment requires an inmate to describe his ailment. Additionally, the form requires an inmate to pre-authorize the deduction of co-payment charges from the inmate's prison account.

Petitioner does not assert that the Department deducted a co-payment from his inmate account. Nevertheless, dissatisfied with the pre-authorization requirement, Petitioner filed a grievance with prison officials. A grievance officer denied Petitioner's grievance as frivolous, noting that Petitioner had been seen by medical department staff for chronic care issues without charge. Petitioner then appealed the grievance denial to the facilities manager, who upheld the denial. Petitioner also sought final review of his grievance but was denied relief.[3]

---

[1] We base the statement of facts on those alleged in the petition for review. *See* Pet. for Rev., 3/3/21. Additionally, Petitioner attached exhibits to his petition; any citations to said exhibits are specifically noted. *See Foxe v. Pa. Dep't of Corr.*, 214 A.3d 308, 310 n.1 (Pa. Cmwlth. 2019) (observing that courts reviewing preliminary objections may not only consider the facts pleaded in the petition for review, but also any documents or exhibits attached to it).

[2] Petitioner pleads that he is an inmate incarcerated at the State Correctional Institution at Houtzdale (SCI-Houtzdale). However, we note that Petitioner is currently housed at the State Correctional Institution at Pine Grove (SCI-Pine Grove). *See* Inmate Locator, Pa. Dep't of Corr., http://inmatelocator.cor.pa.gov (last visited October 28, 2024). This fact does not alter our analysis.

[3] Petitioner did not attach this final denial to his petition but pleads that he received the decision on January 11, 2021. *See* Pet. for Rev., ¶ 13.

2

Dissatisfied with the outcome of the grievance process, Petitioner filed the instant petition.[4] According to Petitioner, the Department adopted this pre-authorization requirement "years [ago] to achieve monetary control over the patient's inmate account." Pet. for Rev., ¶ 17. In relief, Petitioner seeks an order directing the Department to comply with the law.[5] *Id.*, wherefore clause.

The Department filed preliminary objections by demurrer. Prelim. Objs., 4/7/21, ¶¶ 8-34; *see* Resp't's Br. at 10-13. In relevant part, the Department cites to this Court's decision in *Portalatin*, asserting that "the medical co-pay program does not impose the type of atypical and significant hardship that would implicate a constitutional right . . . ." *Id.* (quoting *Portalatin*, 979 A.2d at 949). In response, Petitioner baldly asserts that he has pleaded and proved his claim by a preponderance of the evidence; he offers no argument responsive to *Portalatin*. *See* Pet'r's Br. at 7 (exclusive of white space).

## II. DISCUSSION[6]

Petitioner has challenged procedures adopted by the Department to administer its medical services program. *See* Pet. for Rev., Ex. 1. According to

---

[4] Petitioner pleaded that this Court has jurisdiction over his petition pursuant to both 42 Pa.C.S. §§ 761 and 763, which respectively define our original *and* appellate jurisdiction. However, in his brief, Petitioner has clarified that he seeks relief in this Court's original jurisdiction. *See* Pet'r's Br. at 3 (unpaginated).

[5] To the extent Petitioner seeks a ruling from this Court that the Department has failed to comply with medical payment regulations, we infer that Petitioner seeks declaratory and injunctive relief.

[6] When reviewing preliminary objections, we "must treat as true all well-pleaded, material and relevant facts together with any reasonable inference[s] that can be drawn from those facts." *Cnty. of Berks v. Pa. Off. of Open Rec.*, 204 A.3d 534, 539 n.7 (Pa. Cmwlth. 2019) (citations omitted). We are not required to accept as true "conclusions of law, unwarranted inferences from facts, expressions of opinion or argumentative allegations." *Id.* "[W]here any doubt exists as to whether the preliminary objections should be sustained, the doubt must be resolved in favor of overruling the preliminary objections." *Pa. State Lodge, Fraternal Ord. of Police v. Dep't of Conservation & Nat. Res.*, 909 A.2d 413, 416 (Pa. Cmwlth. 2006).

3

Petitioner, the Department has not adhered to regulations that define a state inmate's co-payment obligations for medical treatment. *Id.*, ¶¶ 4, 17.[7] Petitioner initially sought relief through the Department's internal grievance process. *Id.*, Ex. 1. Upon exhausting this administrative remedy, Petitioner turned to this Court for relief.

"Prison inmates do not enjoy the same level of constitutional protections afforded to non-incarcerated citizens." *Feliciano v. Dep't of Corr.*, 250 A.3d 1269, 1274 (Pa. Cmwlth. 2021) (*en banc*) (citation omitted), *aff'd*, 283 A.3d 196 (Pa. 2022). "Admittedly, prisoners do not shed all constitutional rights at the prison gate, . . . but lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Sandin v. Conner*, 515 U.S. 472, 485 (1995) (cleaned up). The limitation of these protections manifests in different ways.

For example, and relevant here, a prisoner's right of access to judicial review is limited. This Court does not review prison grievances or misconduct appeals. *See Bronson v. Cent. Off. Rev. Comm.*, 721 A.2d 357, 358-59 (Pa. 1998). This is because "internal prison operations are more properly left to the legislative and executive branches, and . . . prison officials must be allowed to exercise their judgment in the execution of policies necessary to preserve order and maintain security free from judicial interference." *Id.* at 358 (agreeing with analysis from this Court that the Department's internal grievance review does not function on the level of a government agency); *see* 42 Pa.C.S. § 763(a)(1).[8]

---

[7] Petitioner cites 37 Pa. Code § 93.12, which outlines the prison medical services program. Subsection (f) defines the program's payment requirements, including that an inmate must authorize the institution to deduct a co-payment fee from the inmate's account for certain medical treatments.

[8] As noted, *see supra* n.4, Petitioner does not seek review in our appellate jurisdiction.

Nevertheless, there is a narrow category of prisoner due process claims that fall within our original jurisdiction.[9] To invoke this Court's original jurisdiction, a petitioner must identify a constitutionally-protected liberty or property interest. *Williams v. Wetzel*, 232 A.3d 652, 653-54 (Pa. 2020). The interest must not be limited by Department regulations yet be affected by a final Department decision. *Bronson*, 721 A.2d at 359; *Feliciano*, 250 A.3d at 1275. States may also create a liberty or property interest protected by due process by adopting certain regulations that "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 483-84.[10] In such cases, the focus of inquiry is on the nature of the alleged deprivation, not the language of a particular regulation. *Portalatin*, 979 A.2d at 949 (discussing *Sandin*).

Absent a protected interest, this Court lacks jurisdiction to consider a claim. *See, e.g.*, *Williams*, 232 A.3d at 654 (reversing this Court because there is "no constitutionally protected interest in maintaining prison employment");

---

[9] The original jurisdiction of this Court is wholly statutory and narrowly circumscribed. *See* 42 Pa.C.S. § 761. "The conferral of original and exclusive jurisdiction creates subject-matter jurisdiction in the Commonwealth Court for the specified classes of claims." *Scott v. Pa. Bd. of Prob. & Parole*, 284 A.3d 178, 186 (Pa. 2022). "[S]ubject matter delineations must be policed by the courts on their own initiative even at the highest level." *Id.* at 188 (cleaned up). Accordingly, we may consider whether a litigant has invoked this Court's jurisdiction *sua sponte*. *Blount v. Phila. Parking Auth.*, 965 A.2d 226, 229 (Pa. 2009); *see also Ferguson v. Pa. Dep't of Corr.* (Pa. Cmwlth., No. 310 M.D. 2022, filed November 30, 2023); *Coats v. Dep't of Corr.* (Pa. Cmwlth., No. 329 M.D. 2022, filed October 2, 2023). We may cite memorandum opinions of this Court for their persuasive value. Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

[10] In *Sandin v. Connor*, 515 U.S. 472 (1995), the United States Supreme Court determined that 30 days in disciplinary segregation "did not work a major disruption in his environment," such as would entitle the inmate to procedural protections. *Id.* at 487.

5

*Bronson*, 721 A.2d at 359 (disapproving this Court's exercise of original jurisdiction in *Kisner v. Dep't of Corr.*, 683 A.2d 353 (Pa. Cmwlth 1996)).[11]

In *Portalatin*, a state inmate suffered from a skin condition. 979 A.2d at 946. Citing the Prison Medical Services Act[12] and Department regulations, the inmate sought to invoke this Court's original jurisdiction so he could challenge the Department's assessment of co-payment fees for his medical treatment and prescription refills. *Id.* According to the inmate, the assessment affected his protected interests not otherwise limited by the Department's regulations.[13] *Id.* at 948-49. The *Portalatin* Court disagreed, observing that "[t]here is no constitutional right to free medical services and prescription medicine." *Id.* at 949. The Court then considered whether the Department's regulations had created a protected interest subject to this Court's review. *See id.* (construing *Sandin*). However, the *Portalatin* Court rejected any such interest because the co-payment program did not "impose

_____

[11] In *Kisner*, this Court accepted original jurisdiction over an inmate's complaint in mandamus, reasoning that the complaint was directed against an officer of the Commonwealth government. 683 A.2d at 355. The *Kisner* Court then sustained the Department's demurrer because the claimant had not established a clear right to relief. *Id.* at 356. The Court did not consider whether the claimant had identified a protected constitutional interest. *See generally id.* Subsequently, the appellant in *Bronson* relied on *Kisner*, but the Supreme Court rejected the *Kisner* Court's analysis, stating, "we reject the rationale of *Kisner* that Commonwealth Court had original jurisdiction in a case not involving constitutional rights not limited by the [D]epartment of [C]orrections." *Bronson*, 721 A.2d at 359.

[12] Act of May 16, 1996, P.L. 220, *as amended*, 61 P.S. §§ 1011–17, repealed by Act of August 11, 2009, P.L. 147. It was replaced by the Correctional Institution Medical Services Act, 61 Pa.C.S. §§ 3301-3307.

[13] We note the logic of the *Portalatin* inmate's argument as follows. The inmate maintained that his skin condition qualified as a chronic illness. *See* 979 A.2d at 946, 949. According to the inmate, 37 Pa. Code § 93.12(d) prohibited the Department from charging a fee for the treatment of chronic illnesses. *Id.* Thus, the inmate reasoned, the regulation had created a protected interest not to be charged for this treatment. *Id.* Although not pertinent to its jurisdictional analysis, the *Portalatin* Court also determined that the premise of the inmate's argument was flawed, observing that the list of chronic illnesses exempt from co-payment fees did not include the inmate's skin condition. *See id.* at 950-51.

6

such atypical and significant hardships as to implicate a constitutional right." *Id.* Thus, even if the inmate's allegations were credited, "this Court does not enjoy original jurisdiction over the case." *Id.*

In our view, *Portalatin* is instructive. Just as the inmate therein, Petitioner has challenged the Department's adherence to regulations developed to administer medical services to state inmates, including the assessment of co-payment fees for some medical treatments. But, as the *Portalatin* Court recognized, there is no constitutional right to be free of co-payments. 979 A.2d at 949. Moreover, these regulations do not create a protected interest, the alleged deprivation of which would trigger this Court's original jurisdiction. *See id.*

Accordingly, we dismiss the petition for review for lack of jurisdiction. *Williams*; *Bronson*; *Feliciano*; *Portalatin*. Because we lack jurisdiction, we dismiss the Department's preliminary objections as moot.

**LORI A. DUMAS, Judge**

7

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Darren R. Gentilquore,                  :
                    Petitioner          :
                                        :
        v.                              :    No. 45 M.D. 2021
                                        :
Pennsylvania Department of              :
Corrections,                            :
                    Respondent          :

## O R D E R

AND NOW, this 29th day of October, 2024, the petition for review filed by Darren R. Gentilquore on March 3, 2021, is DISMISSED for lack of jurisdiction. The preliminary objections filed by the Pennsylvania Department of Corrections on April 7, 2021, are therefore DISMISSED as moot.

**LORI A. DUMAS, Judge**

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Darren R. Gentilquore,            :
                           Petitioner     :
                                    :
                   v.            :   No. 45 M.D. 2021
                                    :   Submitted: September 11, 2024
Pennsylvania Department of    :
Corrections,                   :
                        Respondent   :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE ELLEN CEISLER, Judge
                HONORABLE LORI A. DUMAS, Judge
                HONORABLE STACY WALLACE, Judge

**CONCURRING OPINION BY**
**PRESIDENT JUDGE COHN JUBELIRER**         **FILED: October 29, 2024**

Although I firmly believe that under well-established principles of subject matter jurisdiction, disputes like this, involving the Pennsylvania Department of Corrections (Department), should be in this Court's original jurisdiction pursuant to Section 761 of the Judicial Code, 42 Pa.C.S. § 761, because of controlling Pennsylvania Supreme Court precedent, I must concur with the majority that this case is not. Respectfully, it appears to me that the Supreme Court has created an "inmate exception" to this Court's original jurisdiction, which conflates subject matter jurisdiction with a party's failure to state a claim, two separate and distinct legal concepts with different consequences. For reasons explained more thoroughly below, I feel compelled to write separately to respectfully suggest the Pennsylvania Supreme Court reexamine this issue, particularly in light of its more recent precedent.

# I. SUBJECT MATTER JURISDICTION, GENERALLY

As a general matter, "subject matter jurisdiction inquires into the competency of the court to determine controversies of the general class to which the case presented for consideration belongs." *Domus, Inc. v. Signature Bldg. Sys. of PA, LLC*, 252 A.3d 628, 636 (Pa. 2021) (quoting *Assouline v. Reynolds*, 219 A.3d 1131, 1137 (Pa. 2019)). That authority springs from the Constitution and laws. *See* Restatement (Second) of Judgments § 11 cmt. a (Am. Law. Inst. 1982) (Restatement) (noting that courts' legal authority to decide cases "derives from constitutional provisions or from statutory provisions . . . [that] establish courts and provide for their jurisdiction"); *see also Heath v. Workers' Comp. Appeal Bd. (Pa. Bd. of Prob. & Parole)*, 860 A.2d 25, 29 (Pa. 2004) (subject matter jurisdiction "is conferred by the Commonwealth's Constitution and laws"). Therefore, a court's possession of subject matter jurisdiction is an essential and nonwaivable prerequisite to a court's resolution of a case.

In *Domus*, the Pennsylvania Supreme Court reiterated the "general class of cases" understanding of subject matter jurisdiction. The Court had to decide whether "the failure to authenticate a foreign judgment under [Section 4306 of] the Uniform Enforcement of Foreign Judgments Act, 42 Pa.C.S. § 4306, deprives a trial court of subject matter jurisdiction such that a challenge to that failure may not be waived[.]" *Domus*, 252 A.3d at 634. Reversing the Superior Court, which found the requirement to be jurisdictional, the Court looked to the Pennsylvania Constitution and the relevant jurisdictional statute for courts of common pleas, concluding that "the absence of proper authentication . . . does **not** render the court of common pleas **incompetent to determine controversies of the general class to which this case belongs**, *i.e.*, actions to enforce foreign judgments." *Id.* at 636 (emphasis added). It

helpfully framed the subject matter jurisdiction question as "whether the court **could enter** upon the inquiry, **not whether it might ultimately decide that it was unable to grant relief in a particular case**." *Id.* (quotation marks and citations omitted) (emphasis added).

In *Bisher v. Lehigh Valley Health Network, Inc.*, 265 A.3d 383, 400 (Pa. 2021), our Supreme Court again heeded that distinction. In that case, the Superior Court had sua sponte raised two issues it believed to be "jurisdictional": the unauthorized practice of law by a pro se litigant and the complaint's lack of verification. 265 A.3d at 394-95. The Supreme Court reversed, explicitly referencing federal subject matter jurisdiction jurisprudence. *Id.* at 400.[1] Like *Domus*, *Bisher* also focused its inquiry on the **class of cases** courts may hear, reasoning that "there is no question that the trial court was authorized to adjudicate the [e]state's medical malpractice lawsuit that [the plaintiff] attempted to pursue." *Bisher*, 265 A.3d at 400. The Supreme Court reminded courts that "the label 'jurisdictional' should be reserved 'only for prescriptions delineating the class of cases (subject[ ]matter jurisdiction) and the persons (personal jurisdiction) falling within a court's adjudicatory authority.'" *Id.* (quoting *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004)).

---

[1] The Court explained that

> [e]quating jurisdiction with the competence of the court to determine the controversy generally aligns with the United States Supreme Court's views. "Jurisdiction to resolve cases on the merits requires both authority over the category of claim in suit (subject[ ]matter jurisdiction) and authority over the parties (personal jurisdiction), so that the court's decision will bind them." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999).

*Bisher*, 265 A.3d at 400.

In sum, subject matter jurisdiction is about the general classes of controversies a court is entrusted to hear, *Domus*, 252 A.3d at 636, and that authority is derived from the Constitution and Judicial Code, 42 Pa.C.S. §§ 101-9913, not judicially self-created, *Heath*, 860 A.2d at 29; *Strank v. Mercy Hospital of Johnstown*, 102 A.2d 170, 172 (Pa. 1954). Finally, a litigant's failure to state a claim upon which relief can be granted does **not** deprive a court of subject matter jurisdiction. *Heath*, 860 A.2d at 29.

One other aspect of the courts' treatment of jurisdiction bears mentioning. Notwithstanding its importance, courts are not always precise with their use of the term "jurisdiction." Even the United States Supreme Court has observed that courts sometimes inaccurately say they are dismissing for lack of jurisdiction when, in reality, it is because a litigant has not stated a claim. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 511 (2006). The Supreme Court described this as the "**profligate** . . . use of the term" "jurisdiction." *Id.* at 510 (emphasis added). It further explained:

> Judicial opinions, the Second Circuit incisively observed, "often obscure the issue by stating that the court is dismissing 'for lack of jurisdiction' when some threshold fact has not been established, without explicitly considering whether the dismissal should be for lack of subject matter jurisdiction or for failure to state a claim." *Da Silva* [*v. Kinsho Int'l Corp.*,] 229 F.3d[ 358,] 361 [(2d Cir. 2000)]. We have described such unrefined dispositions as "**drive-by jurisdictional rulings**" that should be accorded "**no precedential effect**" on the question whether the federal court had authority to adjudicate the claim in suit. *Steel Co.* [*v. Citizens for Better Env't*], 523 U.S.[ 83,] 91 [(1998)].

*Id.* at 511 (emphasis added).

Since *Arbaugh*, as illustrated below, the United States Supreme Court has "cleaned up" its jurisdiction jurisprudence by declining to characterize issues as jurisdictional absent a clear statement from Congress that it intended it to be so.

Indeed, "mindful of [the] consequences" of labeling something as jurisdictional, the Supreme Court has "endeavored 'to bring some discipline' to [the] use of the jurisdictional label." *Boechler, P.C. v. Comm'r of Internal Revenue*, 596 U.S. 199, 203 (2022) (quoting *Henderson v. Shinseki*, 562 U.S. 428, 435 (2011)). *See also Harrow v. Dep't of Def.*, 601 U.S. 480, 489 n.1 (2024) (citing *Arbaugh* to disavow an incorrect use of the term "jurisdictional," explaining that the Court previously "used to apply the term 'jurisdiction' in a 'profligate' manner, failing to distinguish between statutes spelling out a court's power and those specifying what steps a litigant should take") (quoting *Arbaugh*, 546 U.S. at 510).

## II.   COMMONWEALTH COURT'S SUBJECT MATTER JURISDICTION

Against that backdrop, I turn to the subject matter jurisdiction of the Commonwealth Court. Making sure to carefully determine whether a given case falls within the Court's subject matter jurisdiction involves consultation of the only sources that shapes its subject matter jurisdiction: the Constitution and the Judicial Code.

> This Court's subject matter jurisdiction was conferred in the first instance by article V, section 4 of the Pennsylvania Constitution,[2] which provides that "[t]he Commonwealth Court shall . . . have such jurisdiction as shall be provided by law." PA. CONST. art. V, § 4. Consistent with that constitutional mandate, the General Assembly enacted Sections 761 through 763 of the Judicial Code to provide for this Court's original and appellate jurisdiction. 42 Pa.C.S. §§ 761-763. At issue here is our original jurisdiction, and Section 761(a)(1) provides that our original jurisdiction extends to "all civil actions or proceedings . . . [a]gainst the Commonwealth government . . . ." 42 Pa.C.S. § 761(a)(1).

---

[2] For a discussion of the background for the creation of the Commonwealth Court and the 1967-68 Constitutional Convention, *see generally* Abraham Lipez, History of the Commonwealth Court, 1 Pa. Cmwlth. vii, vii-xi (1971).

*Empire Roofing & More, LLC v. Dep't of Lab. & Indus., State Workers' Ins. Fund*, 312 A.3d 400, 405 (Pa. 2024).

Section 761(a) provides:

**(a) General rule.**--The Commonwealth Court **shall have** original jurisdiction of **all** civil actions or proceedings:

(1) Against the Commonwealth government, including any officer thereof, acting in his official capacity, except:

(i) actions or proceedings in the nature of applications for a writ of habeas corpus or post-conviction relief not ancillary to proceedings within the appellate jurisdiction of the court;

(ii) eminent domain proceedings;

(iii) actions or proceedings conducted pursuant to Chapter 85 (relating to matters affecting government units);

(iv) actions or proceedings conducted pursuant to the [A]ct of May 20, 1937[, ]P.L. 728, No. 193[], referred to as the Board of Claims Act;[3] and

(v) actions or proceedings in the nature of trespass as to which the Commonwealth government formerly enjoyed sovereign or other immunity and actions or proceedings in the nature of assumpsit relating to such actions or proceedings in the nature of trespass.

(2) By the Commonwealth government, including any officer thereof, acting in his official capacity, except eminent domain proceedings.

---

[3] *Former* 72 P.S. §§ 4651-1–4651-10, repealed by Sections 21(a)(2) and 22(1)(iv) of the Act of December 3, 2002, P.L. 1147.

(3) Arising under Article V of the [A]ct of May 17, 1921[, ]P.L. 789, No. 285[], known as "The Insurance Department Act of 1921."[4]

(4) Original jurisdiction of which is vested in the Commonwealth Court by any statute hereafter enacted.

42 Pa.C.S. § 761(a) (emphasis added). The text of Section 761(a)(1) bespeaks a clear intent on the part of the legislature: when the Commonwealth government is sued, that dispute typically belongs in Commonwealth Court in the first instance.[5] It saw fit to enact several exceptions, recognizing that notwithstanding that general rule, there were classes of cases that belonged, in the first instance, in a different tribunal, like a court of common pleas or the Board of Claims. But typically, lawsuits against the Commonwealth government proceed in Commonwealth Court.[6]

In a recent case involving this Court's original jurisdiction, our Supreme Court demonstrated that it would follow the straightforward analysis espoused in *Domus* and *Bisher*, correcting this Court's "misstatements that [this Court] lacked

---

[4] *As amended*, 40 P.S. §§ 221.1-221.63.

[5] The exceptions to our original jurisdiction "reflect historical considerations and an effort to assure that the Commonwealth Court will not become routinely involved in jury trials." G. Ronald Darlington et al., 20 West's Pennsylvania Practice, Appellate Practice § 40:300 (2023-24 ed.).

[6] It has been explained that our "jurisdiction is unusual in that it is usually based upon an analysis of both the identities of the parties to the proceedings and the nature of the cause of action asserted." G. Ronald Darlington et al., 20 West's Pennsylvania Practice, Appellate Practice § 40:300. While that might appear unusual in the Commonwealth, it is quite routine in the federal courts. For example, to satisfy the requirements of diversity jurisdiction in federal court, the identity of the parties—i.e., that complete diversity of citizenship must exist between all plaintiffs and all defendants—is implicated head-on. *See* 28 U.S.C. § 1332; *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005). Further, there are exceptions to diversity jurisdiction that require courts to examine the nature of the cause of action asserted, as federal courts may not hear cases involving probate, divorce, child custody, or alimony, even if such a case otherwise satisfies the jurisdictional requirements of Section 1332. *See Marshall v. Marshall*, 547 U.S. 293, 308 (2006); *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992).

jurisdiction[.]" *Ivy Hill Congregation of Jehovah's Witnesses v. Dep't of Hum. Servs.*, 310 A.3d 742, 753 (Pa. 2024). In concluding that a declaratory judgment action against the Department of Human Services (DHS) fell "clearly" within this Court's original jurisdiction, and that this Court erroneously concluded it did not, the Supreme Court succinctly explained:

> Jurisdiction relates **solely** to the competence of a particular court or administrative body to determine controversies of the general class to which the case presented for consideration belongs. *See* [*Office of Gov.*] *v. Donahue*, . . . 98 A.3d 1223, 1233 ([Pa.] 2014). . . .
>
> The Commonwealth Court has original jurisdiction over any action brought against the Commonwealth government. 42 Pa.C.S. § 761(a) . . . . The "Commonwealth government" includes departments, boards, commissions, authorities, officers, and agencies of the Commonwealth. [Section 102 of the Judicial Code,] 42 Pa.C.S. § 102; *see also Donahue*, 98 A.3d at 1233. **As DHS is part of the Commonwealth government, the lower court clearly had jurisdiction over [the a]ppellant's declaratory judgment action against DHS**.

*Id.* at 752-53 (some citations omitted) (emphasis added).

In *Donahue*, cited by *Ivy Hill*, the question was whether this Court's original jurisdiction extended to a declaratory judgment action against the Office of Open Records (OOR). There, the Supreme Court rejected OOR's argument that the lack of "a substantial constitutional issue in t[he] action deprive[d] the Commonwealth Court of jurisdiction." *Donahue*, 98 A.3d at 1233. It continued:

> OOR's attempt to limit the Commonwealth Court's jurisdiction . . . **understates the reach of the Commonwealth Court's original jurisdiction over a Commonwealth agency** like OOR. The Commonwealth Court has original jurisdiction over any action brought against the "Commonwealth government," as well as the authority to grant declaratory relief to the same. 42 Pa.C.S. §[] 761(a)[;] [Section 7541(a) of the Declaratory Judgments Act, 42 Pa.C.S. §] 7541(a); *Vine v. Commonwealth*, . . . 9 A.3d 1150, 1165 ([Pa.] 2010)[, superseded by

statute on other grounds as recognized in *In re Koepfinger*, 302 A.3d 630, 635 (Pa. 2023)]. The Judicial Code defines the "Commonwealth government" as including ". . . the departments, boards, commissions, authorities and officers and agencies of the Commonwealth." 42 Pa.C.S. § 102. [] OOR, as a Commonwealth agency, plainly falls within the statutory definition of "Commonwealth government" **and is therefore subject to the original jurisdiction of the Commonwealth Court in any action properly brought against it**. . . . [*S*]*ee also Vine*, 9 A.3d at 1165 (jurisdiction "relates solely to the competency of the particular court or administrative body to determine controversies of the general class to which the case then presented for its consideration belongs"). The fact that [petitioner] is bringing a declaratory judgment action against [] OOR, a Commonwealth agency, to challenge its interpretation of [a statute], places this matter squarely within the scope of the Commonwealth Court's original jurisdiction.

*Id.* (emphasis added).

Here, as in *Ivy Hill* and *Donahue*, the resolution of the present controversy should be simple: "As [the Department] is part of the Commonwealth government, [this Court] clearly ha[s] jurisdiction over [Petitioner's] . . . action against [the Department]," *Ivy Hill*, 310 A.3d at 753, provided it does not fall into any of the five statutory exceptions, which it does not.

## III.    THE "INMATE EXCEPTION" TO JURISDICTION

However, there are two Supreme Court decisions, which support a special rule or a sixth exception for subject matter jurisdiction for certain types of prisoner litigation: *Bronson v. Central Office Review Committee*, 721 A.2d 357 (Pa. 1998), and more recently, *Williams v. Wetzel*, 232 A.3d 652 (Pa. 2020) (*Williams II*), which put its imprimatur on that special rule or exception.

The basic question as articulated by the Supreme Court in *Bronson* was whether inmates could effectively "**appeal**" grievance outcomes, and if they could, whether those "appeals" would fall properly within this Court's original or appellate jurisdiction. 721 A.2d at 357. The inmate filed a petition for review addressed to

this Court's original jurisdiction "seeking compensation for the confiscated property." *Id.* at 358. However, the petition for review was docketed in this Court's **appellate** jurisdiction and, upon doing so, the Court dismissed it. *Id.*

The Supreme Court began its analysis by agreeing with a line of this Court's cases in which this Court had held that the Department's Central Office Review Committee, now known as the Secretary's Office of Inmate Grievances and Appeals, exercises "functions [which] are purely internal to the Department . . . and does not function on the level of a government agency." *Id.* The Court agreed with the basic premise that "internal prison operations are more properly left to the legislative and executive branches, and that prison officials must be allowed to exercise their judgment in the execution of policies necessary to preserve order and maintain security free from judicial interference." *Id.* The Court did **not** examine the text of Sections 761 or 763 of the Judicial Code, instead explaining that because "the procedures for pursuing inmate grievances and misconduct **appeals** are a matter of internal prison administration[,]" it followed that "the [C]ommonwealth [C]ourt d[id] not have **appellate** jurisdiction . . . over inmate appeals of decisions by intra-prison disciplinary tribunals." *Id.* at 358-59 (emphasis added). Although the Supreme Court's conclusion regarding this Court's **appellate** jurisdiction alone was dispositive—given that this Court had docketed the matter only in its **appellate** jurisdiction and had dismissed it therefrom—the Supreme Court nonetheless described why such a claim would fall outside this Court's original jurisdiction as well.

Again, without examining or explaining the textual basis in the Judicial Code, the Supreme Court "reject[ed] the rationale of *Kisner* [*v. Pennsylvania Department of Corrections*, 683 A.2d 353 (Pa. Cmwlth. 1996),] that [the] Commonwealth Court

had original jurisdiction in a case not involving constitutional rights not limited by the [D]epartment . . . ." *Bronson*, 721 A.2d at 359. While it did not disapprove of the holding in *Holloway v. Lehman*, 671 A.2d 1179 (Pa. Cmwlth. 1996), which overruled the Department's jurisdictional preliminary objection on the basis *Holloway* was "clearly within [this Court's] original jurisdiction under Section 761(a)(1) of the Judicial Code since it is an action against a Commonwealth official, the Commissioner of Correction,[7] to which none of the exceptions set forth in Section 761 of the Judicial Code applies," *Holloway*, 671 A.2d at 1181, the Supreme Court in *Bronson*, nonetheless concluded *Holloway* was unlike the facts before it because it "involve[d] the claim of the violation of a specific constitutional right[,]" *Bronson*, 721 A.2d at 359.

The *Bronson* Court posited that even if the appellant had "attempt[ed] to color the confiscation of his clothing as a violation of his protected constitutional property rights, his claim would fail[,]" noting the longstanding principle that "incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Id.* (citation and quotation marks omitted). It concluded the opinion by explaining that "[u]nless 'an inmate can identify a personal or property interest . . . not limited by Department . . . regulations and which has been affected by a final decision of the [D]epartment[,]' **the decision is not an adjudication subject to the Court's review**." *Id.* (quoting *Lawson v. Dep't of Corr.*, 539 A.2d 69, 71 (Pa. Cmwlth. 1988)) (emphasis added).

---

[7] The Commissioner of Correction is now known as the Secretary of Corrections. Section 901-B of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended*, added by Section 4 of the Act of December 30, 1984, P.L. 1299, 71 P.S. § 310-1.

It is befuddling how this statement about a Departmental "adjudication" pertains to our Court's original jurisdiction. Obviously, if there was an adjudication subject to this Court's review, that would have occurred in the context of this Court's **appellate** jurisdiction. Interestingly, the language from the *Lawson* case quoted by the *Bronson* Court was about **appellate** jurisdiction:

> It appears then that if an inmate can identify a personal or property interest which is not limited by Department regulations and which is affected by a final decision of the Department, the Department's decision in those circumstances **may constitute an adjudication subject to our appellate review**.

*Lawson*, 539 A.2d at 71 (emphasis added). The *Lawson* Court did ultimately conclude that the petitioner there would also not be able to proceed in this Court's original jurisdiction, but that too appears based on the premise that the petitioner was not able to state a claim, not jurisdiction in its traditional sense. *Id.* at 72.

It is also difficult to square *Bronson* with *Ivy Hill* and *Donahue*. *Bronson* cited, but did **not** analyze, the text of Section 761 of the Judicial Code; rather it appears to have analyzed what types of claims might survive a **demurrer** in this Court's original jurisdiction. It would be possible to read *Bronson* as suggesting that the only cognizable claims by inmates in this Court's original jurisdiction are those "involving constitutional rights not limited by the [D]epartment[.]" *Bronson*, 721 A.2d at 359. Further, because the result in *Bronson* was affirmance of a dismissal from this Court's appellate jurisdiction, the Supreme Court's commentary about this Court's original jurisdiction would appear to be dicta.

While *Bronson* could have been a "drive-by jurisdictional ruling[]," *Arbaugh*, 546 U.S. at 511, the Supreme Court's decision in *Williams* was not. In *Williams II*, the Supreme Court confirmed that it intended to follow the language it used in *Bronson* about this Court's original jurisdiction. In *Williams II*, a petitioner sought

mandamus in this Court's original jurisdiction against the Department, alleging that the Department had failed to follow its own procedures regarding misconducts in removing him from his prison employment. A majority opinion, authored by then-Judge, now Justice Brobson, granted summary relief to the petitioner over a dissent. *Williams v. Wetzel*, 222 A.3d 49, 56 (Pa. Cmwlth. 2019) (*Williams I*), *rev'd*, *Williams II*, 232 A.3d 652. The majority in *Williams I* held that the Department had failed to comply with its own procedures in discharging the petitioner from his prison employment and ordered notice and an opportunity to be heard on his claims. Neither the parties nor the majority discussed jurisdiction, but the dissent hinted at it by pointing to a line of cases "holding that a prison's adoption of policies and practices creates neither rights in inmates nor a constitutionally protected interest triggering inmates' due process protections." *Williams I*, 222 A.3d at 57 (Simpson, J., dissenting).

On appeal, the Supreme Court in *Williams II* began by pointing out that the dissenting opinion was "correct per this Court's decision in *Bronson* . . . ." *Williams II*, 232 A.3d at 653. It cited *Bronson* for the proposition that "the Commonwealth Court **lacks original jurisdiction** to entertain a prisoner's due process challenge to the actions of prison officials, where the inmate fails to assert a constitutionally-protected liberty or property interest." *Id.* at 653 (emphasis added).[8] Because inmates have no constitutionally protected interest in maintaining prison employment, the Supreme Court reversed, sua sponte finding this Court lacked original jurisdiction. *Id.* at 654. *Williams II* neither cited nor discussed Section 761

---

[8] Notably, the opinion was careful not to include the reference to an "adjudication" in its discussion, presumably realizing it is nonsensical to require an adjudication in this Court's original jurisdiction; the presence of an adjudication is what triggers an administrative agency **appeal**. *See* Rule 1512(a) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 1512(a) (requiring petitions for review of a quasijudicial order to be filed within 30 days of entry thereof).

of the Judicial Code, but rather offered only *Bronson* as its basis for this understanding of this Court's original jurisdiction.

In sum, *Williams II* holds that, for all practical purposes, Section 761's general rule that this Court has original jurisdiction over civil actions against the Commonwealth government contains an inmate exception not delineated in the text of the Judicial Code itself but borne from caselaw. Essentially, the Supreme Court judicially drafted and enacted Section 761(a)(1)**(vi)**, "inmate litigation against the Department in which the petitioner fails to allege a constitutionally protected liberty or property interest."

## IV.    THE EFFECTS OF THIS NEW EXCEPTION

I have several concerns with the *Bronson* and *Williams* "inmate exception." First, and quite simply, it amounts to "an act of judicial legislation, not within [courts'] scope of authority." *Tyrone Area Sch. Dist. v. Delbaggio*, 638 A.2d 416, 418 (Pa. Cmwlth. 1994). The General Assembly provided for several exceptions in Section 761. It could have, but did not, mention the inmate litigation exception reflected in *Bronson* and confirmed in *Williams*. And it is known that the General Assembly is aware of, and has in the past addressed, the potential problems that excessive and meritless inmate litigation can cause. *See, e.g.*, Prison Litigation Reform Act, 42 Pa.C.S. §§ 6601-6608. Certainly, the Supreme Court, with its power to shape the common law of this Commonwealth, has the power to determine whether certain "claim[s]" are "cognizable" in its courts. *Marion v. Bryn Mawr Tr. Co.*, 288 A.3d 76, 78 (Pa. 2023). Thus, to the extent *Bronson* and *Williams II* could be read as simply defining which claims inmates could bring against the Department under the common law, there would be no issue. But I question whether  even the

Supreme Court should rewrite Section 761 and alter this Court's subject matter jurisdiction, which is set forth therein. *See In re Nov. 3, 2020 Gen. Election*, 240 A.3d 591, 611 (Pa. 2020) ("It is not our role under our tripartite system of governance to engage in judicial legislation and to rewrite a statute in order to supply terms which are not present therein.")

Second, the *Bronson* and *Williams II* approach, in transforming a nonjurisdictional issue into a jurisdictional one, obligates this Court to unnecessarily do something highly disfavored: raise issues sua sponte. *See Commonwealth v. Hamlett*, 234 A.3d 486, 502-03 (Pa. 2020) (Wecht, J., dissenting) ("[S]ua sponte decision-making is **roundly disfavored** in the law," as it "deprives counsel of the opportunity to brief and argue the issues . . . disturb[ing] the process of orderly judicial decision-making by depriving the court of the benefit of counsel's advocacy.") (italics and internal quotation marks omitted; emphasis added). *See also* Adam A. Milani & Michael R. Smith, *Playing God: A Critical Look at Sua Sponte Decisions by Appellate Courts*, 69 TENN. L. REV. 245, 316 (2002); Blake R. Hills, *Sua Sponte Dismissals: Is Efficiency More Important Than Procedural Fairness?*, 89 UMKC L. REV. 243, 259 (2020). Certainly, raising subject matter jurisdiction sua sponte is a necessary evil—indeed, the strong medicine required—when the risk is adjudicating a dispute the Pennsylvania Constitution and laws did not entrust to this Court. However, that strong medicine, which has the potential to create a perception that the Court has departed from its role as neutral arbiter to that of advocate, has no place outside the subject matter jurisdiction context.[9] What is more, courts are more likely to make mistakes without the benefit of advocacy from both sides.

---

[9] To the extent sua sponte raising of nonjurisdictional issues may diminish litigants' perception of the courts, that concern is real. Indeed, research in the area of law and psychology **(Footnote continued on next page…)**

RCJ-15

Third and relatedly, because no analytic framework has been provided to guide courts as to when an exception to the application of the jurisdictional statute should apply, courts are left without guidance as to when a failure to state a claim should be considered jurisdictional, in which case a court must raise it sua sponte because it is without authority to otherwise act, or is really a matter of failing to state a claim, a demurrer, which a court cannot raise sua sponte. In short, the lack of clear guidance eviscerates jurisdictional jurisprudence and blurs the line between jurisdiction and failure to state a claim, which have always been two **very different** legal concepts. Until the Supreme Court clarifies its holdings from *Bronson* and *Williams II*, there is no principled way to understand when they apply, except as one judicially created purely for one type of litigant, inmates, which brings me to my fourth and final concern.

This approach has the practical effect of treating inmates unlike any other litigant in the same situation. While the courts frame these cases as turning on jurisdiction, in truth, the courts are reviewing the merits of their claims and determining they have not set forth a cognizable cause of action that would entitle them to relief. For instance, in *Williams II*, the Court disagreed that an inmate has a

---

has confirmed that "[w]hen people feel that they have received fair treatment, they are more likely to adhere to, accept, and feel satisfied with a given outcome, and to view the system that gave rise to that outcome as legitimate." Rebecca Hollander-Blumoff, *The Psychology of Procedural Justice in the Federal Courts*, 63 HASTINGS L.J. 127, 134 (2011). And people do not just care about fair process because it might promise a winning outcome. Indeed,

> the empirical evidence suggests that individuals value fairness of process, **separate and apart from outcome**, because of the special message that fairness of process sends to its recipients: an authority [which] acts in a fair manner is an authority [that] is legitimate and cares about the dignity and social standing of those who stand before it.

*Id.* at 137-38 (emphasis added).

right to require the Department to comply with regulations involving prison employment, noting the inmate admitted to stealing two and a half pounds of sugar during his employment in the kitchen. 232 A.3d at 654. If the petitioners in these cases were not inmates, the Court would have either sustained a demurrer filed by the respondents on the basis that petitioners failed to state a claim or ultimately granted relief to respondents for the same reason. Instead, because they are inmates, the Court essentially examined the petition, found it failed to state a claim and then, says the Court lacks original jurisdiction. In this Court, the adage is well worn that "[p]rison inmates do not enjoy the same level of constitutional protections afforded to non-incarcerated citizens." *Feliciano v. Pa. Dep't of Corr.*, 250 A.3d 1269, 1274 (Pa. Cmwlth. 2021) (quoting *Bronson*, 721 A.2d at 359). However, until Section 761(a) of the Judicial Code is **legislatively** amended to provide for an inmate exception to this Court's original jurisdiction, I respectfully disagree with the majority that "a prisoner's right of access to judicial review is limited." *Gentilquore v. Pa. Dep't of Corr.*, __ A.3d __, __ (Pa. Cmwlth., No. 45 M.D. 2021, filed Oct. 29, 2024), slip op. at 4. Rather, I believe that they are entitled to have the court review the **sufficiency** of their allegations, to the extent it would any other litigant's claims, provided they otherwise satisfy the jurisdictional requirements set forth in Section 761(a) of the Judicial Code, which I believe Petitioner has done here.

Based upon its recent precedent, such as *Ivy Hill and Donahue*, the Supreme Court has shown that it will call it like it is – **failure to state a claim, not lack of jurisdiction**, when confusion exists. However, until the Supreme Court analyzes cases involving inmate challenges to the Department under the same analytic framework as for non-inmates, I am constrained to agree that this Court lacks subject matter jurisdiction to entertain Petitioner's claims against the Department because

RCJ-17

he has failed to state a claim, by not "assert[ing] a constitutionally-protected liberty or property interest." *Williams II*, 232 A.3d at 653. *See also Bronson*, 721 A.2d at 358-59.

_____
**RENÉE COHN JUBELIRER,** President Judge

Judge Wallace joins.